Vanessa Cooper Reg # 58397018
FCC Victorville
P.O. Box 5300
Adelanto, CA 92394
Plaintff in Pro per



FILED
CLERK, U.S. DISTRICT COURT

JUL 1 2 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Vanessa Cooper,
Plaintiff

v.

Federal Bureau of Prisons;
A. Wachington-Adduci
Richard Griffen;
Sharon Bailey;
Ivan Negron;
L. McCullar;
M. king;
Ella Taylor; and
Roes I-X

VERIFIED
COMPLAINT PURSUANT TO
U.S.C 1983 FOR
FIRST & EIGHTH
AMENDMENT VIOLATIONS

**CV17-5138-ODW (AFM)**

RECEIVED
CLERK, U.S. DISTRICT COURT

JUL 1 1 2017

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

NOW COMES Plaintff VANESSA COOPER,by and through proceeding
Pro Per, ànd for her comlaint hereby states the following:

JURISDICTIONAL ALLEGATIONS AND PARTIES

1. This Court is conferred jurisdiction pursuant to 42 U.S.C
   § 1983 and 28 U.S.C. § 1331 et. seq.

2. Venue is proper in the United State  District Court for the
   Central District of California because the Plaintiff is
   currently confined in a Federal Bureau of Prison, (hereinafter
   "FBOP") at the Federal Correctional Complex in Victorville, Ca.
   (hereinafter "FCC Victorville"). The events complained of occurrnce
   happened at a Federal Correctional Institute Aliceville, Alabama
   (hereinafter "FCI Aliceville")

3. Plaintiff was at all times relevant a prisoner in the custody of
   FCI Aliceville of the FBOP.

4. Plaintiff was confined at FCI Aliceville, 11070 Highway 14 P.O. Box
   4000 Aliceville, Alabama 35442 Bureau of Prisons (hereinafter "BOP")
   at all time relevant, during the initial events giving rise to this
   action.

5. The FBOP is a fereral agency funded as part of the Department of
   Justice. The BOP is responsible for the medical care of all prisoners
   in it's custody and under its control.

1

6.  Upon information and belief A Washington- Adduci (hereinafter "Defendant Adduci") is a Federal Officer and Warden of FCI Alliceville at all times relevant to this complaint.

7.  Upon information and belief, Dr. McCullar (hereinafter "Defendant McCullar") is a Federal Officer stationed at FCI Aliceville until year 2015, which is revelant to this complaint.

8.  Upon information and belief Dr. Richard Grifffin (hereinafter "Defendant Griffin") is a Federal Officer of the BOP Health Services and was employed at FCI Alliceville, at all times relevant to this complaint.

9.  upon information and belief, Sharon Bailey RN (hereinafter "Defendant Bailey") is a Federal Officer of the BOP Health Services and was employed at FCI Alliceville, at all times relevant to this complaint.

10. Upon information and belief, M King RN, (hereinafter "defendant King") is a Federal Officerof the BOP Health Services and was employed at FCI Aliceville, at all time relevant to this complaint.

11. Upon information and belief, Taylor Triage Nurse (hereinafter "Defendant Taylor") is a Federal Officer of the BOP health Services and was employed at FCI Aliceville, at all times relevant to  this complaint, until year 2015.

12. Upon information and belief, Ivan Negron MD (hereinafter "Defendant Negron") is a Federal Officer of the BOP Health Services and was employed at FCI Aliceville, at all time revelant to this complaint.

13. Upon information and belief, the true identities are unknown for Defendant Roes I-X. Once the full names and identities are discovered, Plaintiff will amend this complaint.

2

14. Upon information and belief, the entity U.S Department of Justice and Federal Bureau of Prison Health Services, is a government agency and at all times relevant to this complaint was under contract with FCI Aliceville to provide inmates with adequate health care services.

15. The FCI Aliceville Facility is an operational correctional facility and for all times pertinent hereto Defendant Adduci acted as it's Warden  and had the overall control and supervision of it's operation for discretionary and administrative matters, including the interpretation, implementation and review of challenges of violations of FCI Aliceville protocol and procedures.

16. It is noteworthy to alert the court's attention to the fact the BOP Health Services has had numerous complaints for gross medical misconduct.

COMPLIANCE WITH PRE-EXHAUSTION REQUIREMENTS

17. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

18. Plaintiff has complied in all respects with the Pre- Exhaustion Requirements of the Administrative Remedies including the Federal Tort Claims Act ("FTCA") through the appropriate grievance process of the FBOP including FCI Aliceville.

19. Although Plaintiff specifically reference many of her grievances filed against Defendants for the issues currently at bar by their particularized grievance identification numbers, Plaintiff grievance record is broader than reasonably prudent to fully restate the instant Complaint, and Plainfiff thereby incorporates Plainfiff's fully accessible grievance record as if fully - reinstated herein.

20. In addition to filling numerous grievances against the
    Defendants, Plaintiff also wrote to many of these named
    Defendants and e-mails, made to them or their representative
    in the hopes of (and providing the opportunity for) resol-
    ving this matter.

INTRODUCTION AND NATURE OF PLAINTIFF'S DENIALS

21. Plaintiff incorporates by reference all preceding para-
    graphs of theis Complaint as if fully stated herein.

22. Plaintiff is a 43 year old female bringing suit after over
    3 years of denials of appropriate care for a injury that
    occured in the year of 2014, while Plaintiff was exercising
    at the FCI Alliceville recreation. This injury resulted in
    a right knee promement posterior horn medial meniscud tear
    and cartilage thinning within the lateral compartment, and
    degeneration; and in retaliation for Plaintiff's persever-
    ance in seeking treatment despite these denials, continued
    indifference to Plaintiff's medical needs. (see Ex. A)

23. These denials have included willful, knowing, deliberate
    indifference, retaliatory and malicious actions by the
    Defendants named and described herein which have either
    caused additional injury, hastened the progression of joint
    ligaments articular cartilage damage, or which have led to
    permanent damage to the Plaintiff bone,joints, and nerves,
    and the Plaintiff's knees, hips, back, and shoulers which
    in turn causes her intense and excruciating pain, distress,
    loss of quality of life, limited mobility and difficulty
    with the activity of daily life (ADL'S) and no exercise,
    sleeplessness, awkword movments, discomfort and suffering,
    many of which over time will progress to complete joint and

4

distruction to ligament, articular tendon, and cartiage and ACL, disability, disfigurement, crippling or worse.

24. Throughout Plaintiff's years of unaddressed medical sick-call visits, cop-outs, and administrative remedies it was well-documented in Plaitiff's medical records to which the the BOP staff including Defendants McCullar, Griffen, Taylor Bailey, King, Warden Adduci, and (who will be known as once complete name are known to Plaintiff); that the Plaintiff had initially injured her knee back in August of 2014, after entering FCI Ailiceville 4 months earlier, March 21, 2014, therafter; that repeated medical kites for treatment, as well as medical recommendations for less conservative treatment and degeneration,which persists to this day.

25. As a result of Defendants conduct desribed herein Plaintiff right knee never healed properly, and as a direct result of this deliberate indifference, Plaintiff now suffers from constant pain and can not fully use or move both of her legs without popping, partial dislocations, crunching, grinding and often excruciating pain so extreme it even prevents Plaintiff from sleeping normally.

26. There was no legal or medical basis to deny treatment to the objectively obvious, serious and debilitating injuries suffered by Plaintiff.

27. Defentants are being sued in their official and individual capacities, as permitted by law.

5

28. All Defendants named herein were fully informed and well-aware of the nature , scope, and severity of Plaintiff's injuries and the degeneration of Plaintiff's knees through over 2 years of extensively detailed sick-calls, letters, cop-outs, personal meetings and / or examinations of Plaintiff, diagnostic reports and finding in Plaintiff's medical records,and various phone calls and e-mails from Plaintiffs mother (as well as other parties concerned on Plaintiffs behalf).

29. As a dircet and proximate result of the deliberate indifference of Defendants, Plaintiff suffered the following injuries and damages:

    a.  Violation of her constitutional rights under the First and Eighth Amendments of the Constitution of the United States to be free from retaliation for protected speech and to be free from cruel and unusual punisment  inflicted by deliberate indifference to an objectively serious medical need of which Defendants were subjectively aware;

    b.  Denial of the Plaintiff's right to provide adequate and / or treatment for herself, when the Defendants refused to do so.

    c.  Loss of physical liberty; and

    d.  Severe physical injury causing humiliation,emotional distress, pain and suffering, substantial future medical and other out-of-pocket expenses.

PLAINTIFF'S MENISCUS TEAR AND DEGENERATION

30. Plaintiff incorporates by reference all preceding paragraghs of the Complaint as if fully stated herein.

31.   Plaintiff suffers from a serious protrusion tear of the posterior horn medial meniscus, the cartilage of the medial menisscus is lodged between the outer knee joint, and the posterior cruciate ligament is lodged between the inner knee joint, causing degeneration due to the knee being unable to bend over a long period of time of walking of the injury.

32.   Regardless of this obvious and test-confirmed condition the Plaintiff receives absulutely no care for this excruc- iatingly painful and destructive condition.

33.   The treatment for this particulr tear is a arthroscopy surery. Plaintiff was told by the Pickens County Med Center Orthopedic Secialist in 2016 that he informed the BOP this injury would not heal and a surgery is needed for relief, back in 2014.

34.   The Plaintiff has fought vociferously for this treatment to no avail, even when the BOP ordered another MRI in hopes of this injury healing, the Pickens County Med Center Ortho- pedic Specialist would not perform this procedure because of the Plaintiff's gait, it was obvious this tear has not healed almost 3 years later, and he called the BOP himself and asked for the arthroscopy surgery. This appointment was on Feb 23, 2016.

35.   Plaintiff has not been able to get the medical records from mid 2015 to present.

ADDITIONAL AND CONTINUAL DELAY IN CARE FOR TORN MENISCUS

36.   Plaintiff incorporates by reference all preceding para- ghraphs of this Complaint as if fully stated herein.

7

37. Pliantiff has went to sick-call numerous times for pain
in her knee and was left sitting in the waiting room for
many hours then at recall the medical staff would come out
and tell her to leave and don't come back  until your name
appears on the call-out, which it never would. The plaintiff
was told by Defendant Taylor, not to come back to medical
for her knee because there is nothing they can do about it.
At that time the Plaintiff was unaware the results from
her MRI were back and the BOP knew a surgery was needed but
instead of approving the surgery the BOP decided not to
give the Plaintiff any medical treatment for the torn men-
iscus.

38. Every step the Plaintiff take is painful, the orthopedic at
FCC Victorville explained to the Plaintiff in Apr. 2017,
the reason it hurts so bad is because each step she takes
is crunching down onto her tendon and tearing even more,
and can cause a cyst or even infection and more damage.


INDIFFERENCE TO SHOULER INJURY

39. Failure to put restrictions on the Plaintiff after the
knee injury resulted in a  shoulder injury while Plaintiff
was at work (see Ex. C) . The Plaintiff was told to move
some tables (not following a direct order can result in
disciplinary action unless medical put a restriction on
the inmate so the inmate may take it to her job to give
to the officer) The Plaintiff pulled a bone out of place in her
neck, but the Defendant Adduci said in a letter to the

8

Plaintiff, (see Ex. F) that the x-rays were negative. Yet
the Plaintiff's collar bone is visibly uneven and her
shoulder is in pain at the joint, neck and middle of her
back, and when the Plaintiff moves her arm it makes a
popping, grinding crucnhing sound.  The Plaintiff's shoulder
is now positioned lower than the her left side, and no med-
cal attention has been given except a pain shot by Defendant
McCullar in 2014, condition persist until this day.

40.  The Plaintiff was given a work restriction for one month
on October 24, 2014, that consisted of:

(see Ex.C-1)          a. no prolong standing

                      b. sedentary work only

While the Plaintiff was at work she sat down for a few
minutes and Defendant Adduci yelled at the Plaintiff for
sitting down at work and told her,"she is not paying her to
sit down."

GENERAL ALLEGATINS

41.  The following information was gathered after the Plaintiff
received her medical records, the time frame for her records
is from March 2014 to around August 2015. Any other current
records after this date the Plaintiff has not received as
of yet.  After the Plaintiff received her records, and for
the purposes of writing up this law suit the Plaintiff has
put all records in order according to dates of grievances
and medical records to prove her case of retaliation and
deliberate indifference by the Defendants.

42.  The Plaintiff filed a 8 1/2 or Informal Resolution Form on
January 16, 2015. This complaint went to the Plaintiff's

Case Manager, Mr. Collins.   Mr. Collins turned it in to the
Department the Plaintiff was complaining about, in this
case, it went to FCI Alliceville Health Services. (see Ex. H)

43.  In this complaint the Plaintiff states, "she has been to
medical at least 6 different times." She says she wrote
letters to the Warden and to medical records.  She wanted
to know what was wrong with her leg, and she wanted to
know what she can and can't do, so she would not hurt her-
self again as with her shoulder.  She explains how she can't
bend her leg when she walks.  She says she has been stuck
like this for 7 months. In this complaint the Plaintiff
says she had x-rays and a MRI and it's been 3 months and
she can't get the results of the MRI or even a doctors
appointment.  Then she says, " she was put on the call-out
for a doctor's appointment, but when she arrived for appoin-
tment she was notified that she was not going to be seen.
The Plaintiff is begging for help and she states that her
pain is bad. ( see Ex. H-1)

44.  This Informal Resolution was filed in January 16, 2015.  The
Plaintiff's Case Manager, Mr. Collins gave it back to the
Plaintiff 2 months later on March 13, 2015, unanswered and
no solution was made.

45.  If the Plaintiff did not have medical records, she would
not have known about a medical report filed by Defendant
Negron 4 days before  the Plaintiff filed the Informal
Resolution Form. (see Ex. G)

46.  This Defendant is claiming that he made an encounter with
the Plaintiff on January  12, 2015.  He also said he re-

viewed the MRI report and plan to continue with the self-instructed Physical Therapy.

47. This report made by Defendant Negron, was a false report. He deliberately inserted into the Plaintiff's file. The The obvious proof is no one from medical answered the Plaintiff's Informal Resolution stating no medical attention in months.

48. This Informal Resolution could have been responded to, instead this Defendant in this matter whom holds a supervisory or authoritative control and oversight regarding the Plaintiff's care or access to care and the denials thereof, has made a deliberate and blatatly unconstitutional decision procedure and protocol for mandating denials of almost every basic, common and proper form of testing, referrals, examinations, reviews, therapies, treatments, restorative care, concern, and attention to the Plaintiff's serious medical needs. This report filed by Defendant Negron would later determine the medical care the Plaintiff receives and the denials the Plaintiff receive at every level.
Yet this Defendant has never examined the Plaintiff and has no idea of the Plaintiff's health or condition, and the Plaintiff, as of this date January 16, 2015 has not received a Physical Therapy, self-instructed or other wise.

49. The Plaintiff's next grievance was filed on or around March 26, 2015. This grievance is called a 9 1/2 or a Administrative Remedy, it goes to the Warden in this case Defendant Adduci. (see Ex. I)

11

50. Defendant Adduci received the 9 1/2 on April 7, 2015 and the
    initial dead line to answer was April 27, 2015. See Ex. J

51. The FCI Aliceville medical department had not given the
    Plantiff any medical attention for this torn meniscus since
    October 24, 2014, two months after the intial injury on
    August 19, 2014.

52. Defendant Adduci filed an extension of time for response to
    Administrative Remedy.  See Ex. M.  The response due date was
    moved to May 17, 2015.

53. During this time from April 7,2015 to May 17, 2015, the Def-
    endants scheduled 2 appointments with the Plaintiff.  Both
    appointments were with Defendant Griffin, one on April 30,
    2015 the other on May 6, 2015, 7 days apart from each other.

54. The first appointment on April 30,2015 (See. EX. K).  The
    Plaintiff was  finally able to tell the doctor of her pain in
    both of her legs,her back, and her shoulder.  Defendant
    Griffin refused to properly or adequately examine the Plain-
    tiff and gave her a knee exercise pamphlet (See EX.W ), and
    a spine conditioning program pamphlet (See Ex.X ).  Defendant
    Griffin told the Plaintiff if she does not do the exercises
    they will know because her knee will not heal.  He told the
    Plaintiff to start walking right, and he informed her the re-
    quest for surgery was denied.

55. This news was very devastating to the Plaintiff, but most of
    all it was confusin because in the Plaintiff's greivance she
    is asking for the surgery and Defendant Adduci has not answered
    the Administrative Remedy,in fact, the Defendant asked for

a extension to respond.

56.   7 days later the Plaintiff had another doctors appointment
      with Defendant Griffin on May 7, 2015 (See Ex. L).  At this
      appointment Defendant Griffin poked the Plaintiff's right knee
      and squeezed her thigh muscle and he said, "she was loosing, muscle
      and her knee is still sensitive and discomforting.  At this
      appointment Defendant Griffin read the Plaintiff's MRI re-
      port, and gave the Plaintiff a cane.

57.   On May 29, 2015, the Plaintiff received the answer for the Ad-
      ministrative Remedy (See Ex. N).

58.   In the answer it is noted that the Plaintiff is in pain with
      reduced mobility now for 9 months and the Regional Medical Director
      who is also Defendant Negron, has decided not to accept the
      orthopedic consultation at that time.  Plaintiff was advised
      to continue with self-instructed physical therapy, if symptoms
      persist after conservative managment then the BOP will con-
      sider the orthopedics consultation.

59.   On May 26, 2015 the Plaintiff filed a appeal to the Regional
      Office, asking, "why did the BOP give the Plaintiff a MRI
      then deny the requested solution?". (see Ex. O)

60.   By this time the Plaintiff's right knee and foot has been
      swelling up after she does the physical therapy, and every-
      time she goes to medical, she is being told her leg should have
      healed by now by the traige nurse on staff that day, and then
      she is left sitting in the waiting room until recall and not
      being seen.

61.   Other officers in the prison was accusing the Plaintiff of
      faking.  They were saying, "they seen the Plaintiff running

and dancing, taunting the Plaintiff.  Then, when they would see the Plaintiff holding on to her cane with both hands they laughed at her and said, "she is faking" instead of trying to help her and get her medical attention.

62.  The Regional Administrative Remedy Office had until July 29, 2015 to answer the Plaintiff's appeal (See Ex. O-1).

63.  On June 30, 2015 the Plaintiff went to sick call for pain in her heart.  They performed a EKG and a patient assessment and sent the Plaintiff back to the housing unit.  This appointment would later be used against the Plaintiff to farther deny the Plaintiff of surgery.

64.  On or around July 20, 2015, the Plaintiff received the answer to her appeal to the Regional Office.

65.  In the BOP's answer they say the Plaintiff was examined by the staff physician after undergoing an MRI on November 17, 2014. Before November 17, 2014, the Plaintiff was told by the staff physician known as Defendant McCullar that the Plaintiff would need a surgery.

66.  The BOP's decision to deny the Plaintiff's surgery was based on the report from Defendant Negron on January 12, 2015, where the Defendant claimed he recommended the Plaintiff to continue with the self-instructed physical therapy instead of the orthopedic's recommendation for the orthroscopy surgery.

67.  The BOP's next reason for denying the Plaintiff this surgery was for a medical report that the Clinical Director known as Defendant Griffin, put into the Plaintiff's file

on April 30, 2015, where Defendant Griffin repoted that the
Plaintiff admitted to not doing the physical therapy.

68. At the time of this denial the Plaintiff was unaware of the
report by Defendant Negron, claiming he recommended the Plain-
tiff to continue with the self-instructed physical therapy.

69. On April 30, 2015 Defendant Griffin gave the Plaintiff a
physical therapy pamphlet which was the first time the Plain-
tiff learned of the physical therapy. Yet the BOP used this
to deny the Plaintiff.

70. The Regional Office also said in their denial," on May 6, 2015
the Clinical Director or Defendant Griffin noted that the Plain-
tiff made progress with the physical therapy". Even though the
Plaintiff had just learned of the physicl therapy 7 days before
May 6, 2015.

71. Defendant Griffin told the Plaintiff on May 6, 2015 that her
knee was still sensitive to touch and discomforting and she
was losing muscle and his patient assessment noted "Not Improved
/Same.

72. Yet the Regional Office claimed the Plaintiff is making pro-
gress and the Plaintiff is advised to make a good effort
to consistenly perform her self-therapy and she would be mon-
itored for progress.

73. Regional advised the Plaintiff to report to sick-call for any
adverse changes.

7 . The Plaintiff went to sick-call numerous times for swollen foot
amd knee only to be left in the waiting room while everyone else
would be seen. Then at recall Roe I from medical would come

15

out yelling at the Plaintiff about how she would not be seen
and to wait for her name to appear on the call-out. Except
for the June 30, 2015 visit to sick-call for pain in her heart.
The Plaintiff was seen by Defendant Bailey, in Defedants Bailey
medical report was one of the reasons the Plaintiff was denied
the surgery. This Defendant reported the Plaintiff had a normal
gait and did not voice any problem pertaining to her knee.
(See Ex. P)

75. The Plaintiff has followed all the rules since being in prison
and has not been wrote up for doing something she has been
told by a Federal Officer not to do. Now the Plaintiff is being
denied a surgery that is needed, in order for Plaintiff to be
able to walk normal without falling down, or even just bend
down to do the things that any person her age does, the Plaintiff
wants her life back. This day the Plaintiff followed the rules
that the Health Department has told her and all the other
inmate in times past. FCI Aliceville Health Services has made
it clear to the inmates not to come to medical for more than
one problem. Now, the Defendants say the Plaintiff should
have voiced her knee problem. Yet all the other sick-call
visit for her knee were ignored,but the sick-call for her
heart pain was answered. The Defendants know their rules
and they know the Plaintiff is not allowed to complaing about
more than one problem at a time. The Plaintiff chose her
heart over her knee pain that day, but that does not mean
her pain has went away.

76. Defendant Bailey also reported the Plaintiff presented with

a normal gait.

77. The Plaintiff has been walking favoring her right leg now for 11 months now when Defendant Bailey made her report on June 30, 2015. Maybe to this Defendant the Plaintiff's limp is normal, the way the Pliaintiff has to drag the right leg and put all her weight on the left leg, and the left leg is barely able to take another step leaving the Plaintiff with a awkward 2-way limp. Maybe to Defendant Bailey the Plaintiff's gait is normal, but not to the Plaintiff.

78. Regional also stated,"Medical Care will continue to be provided consistent with BOP policy".

79. The Plaintiff has never been seen when the pain is at it's worse and her foot and knee are swollen. The BOP will neither treat nor even address any damages from this condition. Instead the BOP have attempted to diminish it by saying the Plaintiff allegedly claims to have a torn meniscus and wants surgery for relief, in her medical file. The Plaintiff is suffering from a serious, and advancing prominent tear poste- rior horn medial meniscus that is causing more damage to the Plaintiff's entire body and no medical treatment is being done except for pain medication that is causing more problems to the Plaintiff's liver and internal organs.

80. The Plaintiff has tried to get medical attention many times after doing the physical therapy but to no avial, visits where the Plaintiff was sent back to the housing unit, after waiting for over 7 to 8 hours in the waiting room at medical, every other person seen except the Plaintiff where not recorded in

her medical file, but the one time the Plaintiff left after waiting for 2 days to be seen Defendant King recorded," Inmate left health services prior to being assessed." Defendant King also reported that the inmate was upset because she states, "I was here all day yesterday and got sent back". Inmate was to remain in health service to have her foot assessed. Defendant King failed to mention that when the Plaintiff arrived at medical, Defendant King would not let her into medical, Defendant King told the Plaintiff there was nothing wrong with her foot if she was able to get to medical, The Plaintiff told Defendant King she helded onto her cane with both hands putting all her weight on the left leg and arms dragging the right leg. Defendant King was very upset with Plaintiff and showed it by leaving the Plaintiff outside for a few more minutes then decided to let her in. By that time the Plaintiff was very upset that Defendant King was treating her so badly, so the Plaintiff told Defendant King,"thats why I'm reporting ya'll". Defendant King told the Plaintiff," You don't have to come over here". The Plaintiff understood that statement to mean that Defendant King will not help her and if she does she might "accidently hurt her". The Plaintiff reasoned with this for over 3 hours in the waiting room while everyone there was seen and dismissed leaving the Plaintiff in the waiting room alone, so the Plaintiff decided it's best to leave on the next 10 minute move, after that visit the Plaintiff just accepted that she was not going to get help. (See Ex. R)

81. The Plaintiff appealed the Regional Office decision only

because she is racing against the time to save both of her legs from disability, disfigurement, crippling, and total disstruction. Because of a direct result of these Defendants improper and inadequate treatment. The Plaintiff's release date is in the year 2026, that is a long time to have to suffer in this condition when it could have been helped.

82. Plaintiff incorpates by reference all preceding paragraphs of this Complaint as if fully stated herein.

83. The Plaintiff is directed through administrative remedies responses by the Defendants to continue to resolve her issues, which are not answered (or properly acted upon) and for which the Plaintiff must therefore file a grievance to call attention to her medical needs, creating a continuous circle of shuffled, repeated paperwork that never approaches resolving the Plaintiff's serious medical needs. This process is repeated until, as the Defendants hope, the Plaintiff ultimately gives up her attempts to acquire adequate treatment and accepts the situation as it is (until further harm develops as a result, as has happened repeatedly with inmates such as the Plaintiff and did happen with regard to the Plaintiff's knees).

84. Additionally, although numerrous of the Plaintiff's medical administration remedies are summerarized a referenced specifically with their individual identification number, the Plaintiff's administrative remedy record in it's entirety, provides the best evidence of the Plaintiff's repeated attempts to utilize the administative remedies available

to her.   In addition to the following paragraphs, the
Plaintiff incorporates this finite and accessible grievance
as if fully stated herein.

85. In the month of August 2015 the Plaintiff filed a Central
Office Appeat to the General Counsel, this grievance was
rejected along with all the other grievances the Plaintiff
has filed in the past. (see Ex. S)  The Central Office gave
the Plaintiff a reject reason for all 4 admenistrative remedies
and told  the Plaintiff she has 15 days to resubmit all rem-
edies in the proper form.

86. The Plaintiff refilled all remedies on November 14, 2015
(See Ex. S-1)  The Central Office had a response due date
on Feburary 8, 2017 (See Ex. S-2)

87. The Central Office tried to get a extension. (See Ex. S-3)

88. Shortly after the Plaintiff filed the Grievance to the
Central Office the Plaintiff was scheduled for a doctors
appointment on November 24, 2015.

90. This appointment was with Defendant Griffin at this time the
Plaintiff was able , for the first time, to explain to the
Defendant  how the physical therapy makes her foot and knee
swell.  The Plaintiff was concerned about not being able to
do the physical therapy because it hurts to try to perform
the self- instructed therapy.  The Plaintiff told Defendant
Griffin the straight-leg lifts, hamstring curls, wall squats
step-ups, quadricep stretch, and the single leg dips seem to
hurt more than help  (See Ex. W). At that time Defendant
Griffin told the Plaintiff she is not suppose to do those kinds
of exercises.  That was very confusing to the Plaintiff because

7 months earlier this Defendant told the Plaintiff, "if she does not do the phycical therapy they will know because her leg will not heal," now 7 months later the same Defendant is saying the Plaintiff was not suppose to do these kind of exercies.

91   The Regional Director on July 20, 2015 advised the Plaintiff to make good effort to consistently perform her self-instructed exercises, and told her she would be monitored. They told the Plaintiff to report to medical for any adverse changes. Yet this Plaintiff could not get any medical attention for her knee pain after doing the physical therapy.

92.   In the Central Office answer, they noted Defendant Griffin examination on November 24,2015, with no improvement. ‖See Ex. T‖  At that time Defendant Griffin submitted a consultation for evaluation by an orthopedic specialist.

93.   The Plaintiff was told a appointment will be made in the near future, and further treatment will be considered based on the orthopedic specialist's recommendations.

94.   The Central Office said the records reflects the Plaintiff is receiving medical care and treatment in accordance with evidence based standard of care and within the scope of services of the FBOP.  Which consist of a cane and a lower bunk pass as well as Ibuprofen for pain.

95.   Upon information and belief, none of these Defendants have ever denied the medical concerns raised by the Plaintiff in this Complaint; rather they simply elected to ignore and supply absolutely no meaningful treatment for the Plaintiff, falling

well short of the community standard of care.

96. On February 23,2016 the Plaintiff was taken to Pickens County Medical Center to finally see a orthopedic specialist. At that time the Orthopedic Specialist Alexander Lushington, Jr. MD became very upset that the Plaintiff now almost 2 years later still has not received the arthroscopy procedure. Dr. Lushington informed the Plaintiff that the BOP wants him to perform another MRI, but he refused to do so because he told the Plaintiff this kind of tear does not heal. Dr. Lushington also told the Plaintiff that he informed the Defendants in 2014 this meniscus tear will not heal and he recommended the surgery at that time to the BOP. Dr. Lushington performed x-ray instead of a MRI because he wanted to see how much damage has been done to the Plaintiff bones because of the physical therapy and because the Plaintiff has been walking on this injury for a long time. Dr. Lushington told the Plaintiff if you tore this meniscus in 2014 then it is still torn now in 2016. He also said the arthroscopy surgery might not help the Plaintiff now, because to much damage has already happened to the cartilage because of natural traction and increase in size because of tumor like swelling of the cart- ilage. Now the Plaintiff might need a full knee replacement. (See Ex. T-1) At that time Dr. Lushington called the BOP him- self and asked for the surgery. then he had the Plaintiff sign surgery consent forms. No surery has happened to this date.

97. In fact all medical treatmentfor this BOP inmate has stopped after the February 23, 2016 appointment with Dr. Lushington.

Including the Plaintiff's chronic care for fibroid tumors, (See Ex. T-2) The Plaintiff has been left on medication that is causing more harm then good.

98. Defendant Griffin informed the Plaintiff in 2014 that he will Perscribe Norethindrone/Ethinyl for a short period of time because he said it is not good for her system. Pickens County Medical Center recommended a Depoprevera shot to shrink the tumors. Instead Defendant Griffin went with the Norethindrone/ Ethinyl birth control pills.

99. In retaliation for filling numerous grievances these Defendants has decided to leave the Plaintifff on this medication and not follow through with any procedures that were already in progress to relieve the Plaintiff of these fibroid tumors.

100. In fact the side effects from this drug is causing blood clots in the Plaintiff's eyes and pain and tenderness in the Plaintiff's stomach internal pains causing the Plaintiff to double over holding her stomach until the pain passes (See Ex. X-1)

101. Defendant McCullar informed the Plaintiff in 2014 that she will perscribe Ibuprofin 800 for pain, (See Ex. B) for a short period of time because it causes liver damage as well as damage to your internal organs. As of this date there has never been any test or follow-up appointments in regards to the side effect of these medications. Now the BOP is using this short term medicine as treatment for this Prominent tear posterior horn medial meniscus.

102. The Plaintiff's condition has never improved in the slightest. by taking Ibuprofin as a matter of fact it doesn't help her

at all.

104. The Plaintiff's last visit to FCI Aliceville Health Services was in 2016, the Plaintiff's name came on the call-out for medical. When the Plaintff arrived to her visit she met with Defendant Roe-X who informed the Plaintiff at that time, that the BOP does not want to pay for the Plaintiff's knee surgery. He also told the Plaintiff that she also has fibroid tumors, that is going to cost a lot of money. Defendant Roe-X said, "the BOP will not tell you this, they are just going to deny you the surgery". He also said, "that the only reason the orthopedic is asking for the surgery is because he wants to make the money". At that time the Plaintiff reported again that her left leg is in excruciating pain, because she is put-ting all her weight on the left leg because the injured leg is also in excruciating pain, Defendant Roe-X told the Plain-tiff she can't prove that's the reason her left leg is hurting. Defendant Roe-X never mentioned the Plaintiff's shoulder. The Plaintiff informed the Defendant of a inmate name Stacy McIntyre who tore her meniscus in 2015 at FCI Aliceville, the BOP gave her the knee surgery. McIntyre injured her knee while playing baseball, the Plaintiff had been told by other medical staff that she (Plaintiff) would get the surgery because she (Plaintiff) has a long sentence. If the Plaintiff had a short sentence the BOP would not give the surgery. Yet this person Stacy McIntyre received this surgery and she had a very short sentence. The Plaintiff knows this because when Stacy McIntyre came back from receiving the knee surgery, the entire population at FCI Aliceville came to the Plaintiff and informed

24

the Plaintiff of this inmate and introduced the Plaintiff to Stacy McIntyre.  At that time the Plaintiff asked McIntyre, and she told the Plaintiff all this information before she was released.  The Plaintiff also told Defendant Roe-X of another inmate she met here  FCI Aliceville who received the surgery to remove the tumors off of her uterus instead of a hysterectomy, which is the procedure Defendant Griffin told the Plaintiff she would get to prevent droppage.

105. In the Plaintiff's case, these violations have been especially grievous since they have permitted the Defendants to simply "pretend" that the Plaintiff is "fine" solely "because thay say so" not backed up by any qualified expert, diagnosis, or test. For example, Defendant Griffin saying, "the Plaintiff has improvement." Defendant Bailey saying, "the Plaintiff has a normal gait." Defendant Adduci saying, "the Plaintiff's x-rays are negative.

106. Plaintiff waited a few months before going to the next level in her complaint. On March 25, 2016, Plaintiff filed a 2241 in the Northern District of Alambama. Asking the court to help her receive adequate medical treatment and monetary damages. The District court of Alabama advised the Plaintiff to file a Bivens for this type of case. The Plaintiff filed the Bivens, but was unable to pay the court fees, so the court dismissed the case without Prejudice.

107. The Plaintiff's last resort before filing this lawsuit was a Tort Claim for Inadequate Medical Treatment, for a Prominent

Tear Posterior Horn Medial Meniscus. The Plaintiff asked for $2400.00, for property damage because the Plaintiff could not work to her full capacity due to the injury that was not prooerly treated. The Plaintiff asked for the sum of $14,000,000.00 for personal injury. The Plaintiff asked for this amount because the Defendants knew by the MRI that this meniscus tear was torn beyond repair in 2014, and needed to be removed in a timely manner to prevent further damage, yet nothing was done. Furthermore the Defendants had the orthopedics recommendation and still did not help the Plaintiff. Now the Plaitiff  x-rays shows fluid on the knee, arthritis, bone fragments, joint degeneration, and other damage not yet known of, leaving the Plaintiff's future in question of will she be able to walk be the time she 45 years old.  (See Ex. U)  The Defendants BOP said, " the Tort Claim is denied because ther was no indication that the Plaintiff has suffered injury because of the negligence of the BOP employees acting within the scope of his or her employment. (See Ex. V)

108. Plaintiff asserts that the named Defendants in this matter each have personal responsibility and liability for the claims made herein, to include each having intimate knowledge of the facts asserted, including the Plaintiff's serious medical conditions and intense suffering.

109. Defendants named herein were made fully aware of the Plaintiff's serious medical conditions and intense suffering via direct, face-to-face contact as well as the above mentioned grievances and medical kites the finite and accessible records of each Plaintiff incorporates by reference

as if fully stated herein) and had the full authority to rem-
edy said suffering, and had legal, moral and professional
responsibility to act, protect, and provide appropriate care,
assistance and / or relief for the Plaintiff.

DEFENDANTS

110. Additionally, Plaintiff refers to "Defendants" generally due
to the collaborative nature of this 3 year- long practice of
deliberate indifference and retaliation towards the Plaintiff's
as well as the medical and grievance records incorporated
herein, additionally clarify how each of the individual Def-
endants named herein played their "role" in this collaborative
scheme (beyond the allegations specific to individual Defendants
listed below.)

DEFENDANT ADDUCI

111. Defendant Adduci, as Warden of FCI Aliceville was personally
involed in the deniel of all of the Plaintiff's medical
grievances, acknowledged Plaintiff's concerns, needs and
suffering by "parroting" her specific claims in her deniel of
Plaintiff's grievances.

112. Defendant Adduci further refused to provide any aid or ass-
istance, or to require staff under her control (administrative
and medical), to provide the Plaintiff with proper care, and
attention or relief.

113. Additionally, Plaintiff had this Defendant contacted on mult-
iple occasions to no avail. Yet this Defendant added hardship
to the Plaintiff's injury by not allowing the Plaintiff to sit
down while working, even though medical had a restriction on
the Plaintiff for sedentary work only.

DEFENDANT NEGRON

114. Defendant Negron's one and only report set in motion a train of inadequate medical treatments after reading the Plaintiff's MRI report in 2014.   Knowing at that time the Plaintiff's meniscus tear was unrepairable, Defendant Negron having never had a encounter with the Plaintiff, made a decision not based on medical reports but on out-of-pocket expense which was the self-instructed physical therapy.   Only to find out a year later the physical therapy was the wrong exercise for a torn meniscus.

DEFENDANTS NEGRON, GRIFFIN, AND McCULLAR

115. These Defendants had the full responsibility for ensuring the safety, health and well-being of the Plaintiff and ensuring that she received timely, prompt, and adequat medical care.

116. As the Plaintiff has had meetings with Defendants Griffin, McCullar and as they have the greatest amount of direct control and personal responsinility for the pain and suffering the Plaintiff endured and continues to endure, the majority of the Plaintiff's grievances directly revolve around these Defendants.   Defendant Griffin falsifing the Plaintiff medcal records, and both Defendants not telling the whole truth to ensure a denial of adequate medical care.

117. These Defendants have been repeatedly informed of the Plaintiff's medical conditions, pain and suffering to include via the Plaintiff's own letters, grievances, and medical records

118. These Defendants personally met the Plaintiff where she detailed her pain and suffering as well as her conditions and their effects.

119. Each Defendant decried the expense of treating the Plaintiff and alleged some "threats from higher up," which require them to restrict care they otherwise knew was medically necessary.

120. Defendants Griffin and McCullar admitted to knowing the Plaintiff suffered from numerous inflammatory conditions, incredible pain, sleeplessness, distress, suffering, ligaments and joint damage particulary in the Plaintiff's deteriorated knees, hips, shoulder and back (non of which received adequate attention, evaluation, or care under the accepted community standard of medical treatment.)

121. Each Defendant refused to properly document Plaintiff's concerns, to make proper referrals to specialists,or to permit proper testing or follow-ups.

DEFENDANTS GRIFFIN, BAILEY, AND KING

122. These three Defendant Bailey, King, and Griffin worked the most in "tandem" to retaliater against the Plaintiff, to manipulate denials of care at every level, to frustrate, hamper or completely block the Plaintiff's attempts to obtain herself adequate medical care for 2½ years.

123. Plaintiff has been denied medications, examinations, reviews and access to actual qualified health care providers for personal non-medical, vengeful and retaliatory reasons by these Defendants.

124. These three Defendants retaliated against the Plaintiff by falsifing the Plaintiff's medical reports and medical reports that are misleading,to assure a denial of surgry, and leaving the Plaintiff in the waiting room for sick-call and set appointments.

DEFENDANTS KING, BAILEY, TAYLOR, AND ROES I-X

125. These Defendants are FCI Aliceville nurses, physicians, working in either "facility" or "administrative/regional" capacities. Each Defendant had personal knowledge of the Plaintiff's pain, suffering and related untreated medical need.

126. As detailed in Plaintiff's many sick-call visits and grievances which, as a finite and accessible record, Plaintiff incorporates as if fully stated herein. She either met with personally contacted each of these Defendants on her behalf regarding her serious medical conditions and needs.

127. Each Defendant had the authoity and duty to provide the Plaintiff some type of relief for these serious medical needs, but deliberatly failed to do so.

128. Each of these Defendants also refused to properly review, answer or act upon the Plaintiff's grievances, or to properly thoroughly examine her, or see that she was examined, refer her to an expert or to document her detailed complaints, conditions, and suffering.

129. These Defendants in a discrete way, accused the Plaintiff of faking and even said," her knee should have healed already". The Défendants attempts to down play the Plaintiff's injuries are deliberate indifference, retalitory and malicious actions.

130. Defendant King retaliated against the Plaintiff by intimidating the Plaintiff with a face-to-face confrontation. Not allowing the Plaintiff to enter Health Services while she is in excruciating pain to frustrate the Plaintiff then threatening the Plaintiff by telling her, "she don't have to come over here".

131. Defedant Bailey retaliated against the Plaintiff by not seeing her for any sick-call visits pertaining to her knee, instead waiting for a opportunity to discredit the Plaintiff for any other medical visit not concerning the Plaintiff's knee knowing the inmates can only report one medical concern at a time. Yet Defendant Bailey took the opportunity to report about the Plaintiff knee while the Plaintiff was at medical for chest pains trying to deflect the Plaintiffs knee pains as no problem.

132. The Informal Resolution the Plaintiff filed in 2014 went from the Plaintiff's counselor Mr.Collins to Defendant Taylor, it was this Defendants responsibility to have this Informal Resolution answered, yet it was deliberatly ignored.  Allowing Defendant Negron's false encounter with the Plaintiff to go unanswered leaving this fraudulent inadequate medical treatment in the Plaintiff's file.

DEFENDANT FEDERAL BUREAU OF PRISONS

133. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

134. This Defendant is/was the FCI Aliceville Grievance Coordinator during the relevant time period contained in this Complaint.

135. In this role, the Defendant has personal control, direction and oversight in the BOP Grievance Procedure.

135. The Defendants duties include the responsibility to see that the Plaintiff's grievances are properly reviewed, assigned and answered.

136. This extends to a notation to staff made on top of every memorandum she sends to medical personnel to answer the

specific claims of the Plaintiff.

137. Regardless of this duty and contrary to policy, procedure, and the Plaintiff's repeated complaints(also clearly identified in grievances), this Defendant has never required the other Defendants to properly answer the Plaintiff's well-drafted detailed grievances.

138. Defendant has, through medical grievances, been made fully aware of the entirety of the Plaintiff's injuries, suffering and the need for medical treatment and took absolutely no steps to see that the responsible parties were held account-able of that the Plaintiff received any appropriate care.

VIOLATIVE POLICIES,PRACTICES AND CUSTOMS OF FCI ALICEVILLE MEDICAL SUPERVISORY DEFENDANTS

139. The Defendants in this matter whom hold supervisory or authoritative control and oversight regarding the Plaintiff's care or access to care and denials thereof, have maintained a deliberate, consistent and blatantly unconstitutional pattern, practice, custom procedure and protocol for virtually mandating denials of almost every basic, common and proper form of test-ing, referrals, examinstions, reviews, therapies, treatments, medications, restorative care, concern, attention to the Plaint-tiff's serious medical needs and an almost wholesale refusal to properly listen to, record or act upon the complaints, concerns and medical distress either expressed by the Plaint-tiff or which would be obvious to any skilled medical prac-titioner and in most cases, to even the common layman.

140. Defendants refuse to properly or adequately examine the Plaintitt, a complaint made by thousands of other BOP prisoners.

32

141. Defendants refuse to listen to the Plaintiff's concerns, refusing to provide sufficient time to express them, and willfully and deliberately refusing to record those concerns in her medical record, to protect themselves from future review, to ensure that there is no detailed record of the Plaintiff's persistent complaints and attempts to access proper care, and to ensure there is no full (and therfore condemning) record that would be available to an attorney, review board, court or jury, a complaint also made by thousands of other BOP pridoners.

142. Defendants have a practice, policy and custom of automatically denying any requests for treatment beyond a cursory and half-hearted"examination" after which an order of little more than anti-inflammatory drugs ('such as Ibuprofin 800) is given, if anything. ('most commonly, nothing is prescibed.)

143. Defendants maintain a regular practice of automatically diminishing, mocking, degrading and otherwise demonstrating complete indifference to the Plaintiff s incredible pain and suffering,demeaning her presentations of pain even with knowingly painful conditions such as torn meniscus causing fluid and arthritis to set into her joints.  gnoring Federal Pain Management Guidelines, telling the Plaintiff,"you are not in pain" or "does not appear to be in much pain" a complaint also made by thousands of other BOP prisoners.

144. Defendants retaliated against the Plaintiff for grievances and complaints to include taking away minimal care provided, where the Plaintiff's conditions did not in the least lessen, heal, or resolve and where the Plaintiff reported no such

alleviation of her suffering.

145. Defendants agree to"ignore" or deny care for obvious con-
ditions, such as the Plsintiff's torn meniscus and fibroid
tumors, pain and progressive damage, to create the illusion
that they "do not exist" regardless of evidence, test results,
diagnostics and Plaintiff's self-reporting and regardless of
the Plaintiff's obvious suffering and need for care,a common
practice which knowingly creates a "wall of resistance" to
all other care providers giving consideration to Plaintiff's
complaints.

146. Thus for example, this action relative to the Plaintiff's
torn meniscus and fibroid tumors the Plaintiff has had to
leave FCI Aliceville in hopes of getting proper medical
attention at another FBOP.  Yet here at FCC Victorville the
medical staff are baffled because of the Plaintiff's medical
records. In the Plaintiff's medical file are incomplete
treatment  complaints and surgery forms signed by the Plain-
tiff, leaving FCC Victorville with the assumption the Plain-
tiff has had a surgery.  Yet the obvious gait of the Plaintiff
and the over-sized tumors shows her condition has become
worse.  FCC Victorville informed the Plaintiff that FCI
Aliceville should have put a medical hold on her until they
were done with their treatments. Dr. Quinn here at FCC Vic-
torville told the Plaintiff that FCI Aliceville is expecting
them to pay for her treatments, and that is the why they
moved her.  FCC Victorville does not know where to start in
treating the Plaintiff because her medical file is confusing.
Leaveing the Plaintiff to suffer longer not knowing what will

happen next, or if any medical treatment for relief will ever happen.

147. Each Defendant had absolute authority to provide the Plaintiff with timely proper referrals to specialists, testing and follow-up care, and in violation of their professional duties as physicians, these Defendats refused to do so.

148. As discussed above, the Defendants has exhibited their deliberate indifference to Plaintiff's most basic medical needs in blatanly, and at times fraudulently, retaliatory fashion.

COUNT 1
First Amendment Violations- Retaliation

149. Plaintiff incorporates by reference all preceding paragraghs of this Complaint as if fully stated herein.

150. Whent the events contained in this Complaint occurred, Defendants McCullar,Griffin,Negron,Bailey,King,Adduci, and Roe I-X were acting within the scope of their employment and under the color of law.

151. The First Amendment of the U.S. Constitution provides, in pertinent part,that "Congress shall make no law abridging the freedom of speech, or to petition the Government for a redress of grievances".

152. By filing the Administrative grievances against the Defendants the Plaintiff engaged in First Amendment-protected conduct,as these geievances sought redress in the adjudication level of the facility (or, in the alternative, in these Honorable Courts, which require such attempts at securing administrative remedy before filing suit).

153. As a direct and proximate result of the filing of these griev-
ances, and other compaints (as well as the assistance of other
officers retatiation), the Plaintiff suffered adverse action
through retaliation, including the removal of the Plaintiff's
medical care for other serious medical issues, leaving the
Plaintiff in the waiting  room for sick-call and set appoint-
ments, recording false information in the Plaintiff's medical
file, and the non-recording of important fact,details and
questions posed by the Plaintiff at these "medical encounters"
the retaliatory transfer from the FCI Aliceville Facility
with out putting a medical hold of the Plaintiff to complete
the Plaintiff's medical needs, and other officers harassing
the Plaintiff "playing" saying "she's faking".

154. Although the Plaintiff's incorporated grievance record does
not identify the percise involvment of each of these individ-
ual Defendants with regards to their  particular actions of
retaliation, once the Plaintiff received her medical records
she was able to see the flagrantly suspicious timing of Defen-
dants adverse actions demonstrates a clearly causal connection
between the protected conduct (Plaintiff's grievances) and the
adverse action (listed above and also with Plaintiff's
grievance record,which is fully accessible to Defendants
and is incorporated as if fully stated herein):

A.  Defendants Griffin and Bailey retaliated against the Plaintiff
by filing flagrantly false and contradictory medical notes in
the Plaintiff's medical file, to manipulate a denial of ad-
equate care.

B.  Defendant King further retaliated against the Plaintiff by

36

personally confronting Plaintiff and telling her, "she does not have to come to medical" if she does not like the way they are treating her.

C.   Defendants further retaliated against the Plaintiff by telling her, "her leg should of healed already". Then would not put her on the call-out for medical in an attempt to "frustrate" the Plaintiff for her complaints about the medical staff unprofessional conduct with the Plaintiff.

D.   Defendant Griffin retaliated by not addressing the Plaintiff's complaint about her left leg. Defendant Griffin laughed it off and said, "it was because the Plaintiff is over weight". Defendant Griffin retaliated by refusing to listen to or document the Plaintiff's medical concerns, or provide her with any sort of acceptable medical examination. Defendant Griffin filed false claims in the Plaintiff's medical records including a false claim that the Plaintiff admitted to not doing the physical therapay, then said,"she is making progress", and lastly stated,"no improvement".

COUNT II
Eighth Amendment Violations

155. Plaintiff incorporates by referecne all preceding paragraphs of this complaint as if fully stated herein.

156. The Eighth Amendment of the U.S. Constitution provides,in pertinent part, that cruel and unusual punishments not be inflicted.

157. Defendants decision  to withhold adequate menical care and treatment from the Plaintiff, while she is in the FBOP custody violates her constitutionally protected rights.

158. Defendants further decision to adiminister a drug ( ibprofin 800) that damages the liver without informing the Plaintiff of the risk if the Plaintiff has ever had liver damage, and to continue the administration of this drug for over 3 years constituted deliberate indifference, particularly when the Defendants never did a follow-up test or examine the Plaintiff for damages.

159. Defendant Negron's decisionf to falsely report a encounter with the Plaintiff and false treatment is constituted as deliberate indifference, particularly every decision after that report guaranteed a denial of adequate medical care.

160. Defendant Griffin's decision to give the Plaintiff a self-instructed Physical Therapy that causes more harm and damage to the Plaintiff's ligaments, cartilage, tendons, and joints also constituted deliberate indifference, particulary when when the damage suffered by the Plaintiff's right knee and foot kept swelling-up and the Defendant never examined the Plaintiff or even had knowledge of the exercises contained in the self-instructed Physical Therapy Packet.

161. Defendants King and Bailey's decision to minimize the Plaintiff's serious medical needs to assure the Plaintiff does not receive adequate medical care shows deliberate indifference to the rights of the Plaintiff.
This indifference violated her constitutionally protected Eighth Amendment right to be free from cruel and unusual punishmint.

162. As a direct and proximate result of Defendants actions, the Plaintiff suffered physical and emotional injury,disability,

permanent damages, humiliation, and other constitutionally
protected rights and damages as described herein.

163. Defendants McCullar, Griffin, Bailey,King,  Taylor, Negron,
and Roe I-X at FCI Aliceville Medical Department committed
the Constitutional violations described in this Complaint as
a result of the training and/ or lack of training, policies,
procedures, and customs adopted and enforced by Defendant
FBOP, and defendant Adduci, in addition to the lack of dis-
ipline implemented by the Department with regard to ensuring
proper medical care and review.

164. Defendant Adduci, Regional Medical Director acted with
diliberate indifference or failed to act by failing to properly
train, monitor, direct, disciline, and supervise their medical
and/ or correctional staff, and knew or should have known that
their medical staff,specifically Defendants Griffin, McCallar,
Bailey, King, Taylor, Negron, and Roe I-X would continue to
engage in improper training, customs, procedures, and practices
on behalf of the FBOP.

165. As a direct and proximate result of the deliberate indiffer-
ence of Defendants McCullar, Griffin, Bailey,King, Negron,
Taylar, and Roe I-X, the Plaintiff suffered the folling injuries
and damages:

A.  Physical injuries, disability and permanent damages;

B.  Pain,suffering, and emotional distress;

C.  Anxiety, fear, sleeplessness, and depression;

D.  Humiliation and embarrassment;

E.  Other injuries, damages or consequences that are found to be
rlated to the incident that develop or manifest themselves

during the course of discovery and trail.

COUNT III
Intentional Infliction of Emotional Distress

166. The Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

167. Defendants conduct as outlined above was extreme, outrageous abusive, and of such character as not to be tolerated by civilized society.

168. Defendants conduct resulted in severe and serious emotional distress by:

A.   Intentionally inflicting emotional distress upon the Plaintiff by unprovoked and unjustified mistreatment and humiliation.

B.   Intentionally avoiding, ignoring, disregarding the Plaintiff's medical needs.

C.   Intentionally depriving the Plaintiff of medical care and treatment going so far as to restrict or falsify notes in the Plaintiff's medical file.

D.   Intentionally preventing the Plaintiff from exercising her Eighth Amendment rights of seeking relief for on going pain and suffering.

E.   Intentionally refusing the Orthopedic recommendation for relief.

168. As a direct and proximate result of said intentional willful wanton and reckless conduct by Defendants Adduci, Negron, Griffin, McCullar, Bailey, King, Taylor, and Roe I-X the Plaintiff has suffered severe and lasting physical injuries, mental anguish, pain and suffering, loss of enjoyment of life, humiliation, degradation, and uncurred medical expenses, all

40

past, present, and future and other damages as described herein.

PRAYER FOR RELIEF

169. Wherefore, the Plaintiff respectfully prays that this Honorable Court grant the folling relief:

A. Compensatory damages in as amount which is fair, just, and resonable.

B. Punitive and/ or exemplary damages in an amount which is fair, just and reasonable;

C. Injunctive relief to secure assess to care necessary to address the Plaintiff's medical needs, including but not limited to, any surgery, medication, supplementation, and other treatment necessary for her injured knees, meniscus, cartilage, tendon, joint, bone, back, shoulder, and tumors.

D. Entry of declaratory judgment stating that the Ddefedants policies, practices, acts and omissions violated the Plaintiff's rights guaranteed to her by the First and Eighth Amendments to the Constitution of the United States of America;

E. Such other and further relief as this Court may deem appropriate, including cost, interest, and reasonable attorney fees pursuant to 42 U.S.C. 1983 if and when a attorney is obtained.

CONCLUSION

170. The Plaintiff has suffered unnecessarily over the last 3 years as a direct and proximate result of the Defendants intentional disregard for her medical needs. Budgetary concerns, which clearly is the driving force here, should not cause the Plaintiff to be crippled for life. The Plaintiff reminds the court she has no legal training and is representing herself in pro per. As such, she requests the court to

apply the liberal pleading standard applicable to pro se
litigants.

Date this 27 day of June, 2017          By: _Vanessa Cooper_
                                              Vanessa Cooper
                                              Federal Reg. #58397-018
                                              Satellite Prison Camp
                                              FCC Victorville
                                              P.O. BOX 5300
                                              Adelant, CA 92301

## DECLARATION

    I, Vanessa Cooper, Plaintiff in pro per for this VERIFIED
COMPLAINT, hereby state the facts as alleged herein are true
and correct based upon my information and belief.

Executed at Victorville, Californis this 27 day of June, 2017

_Vanessa Cooper_
Vanessa Cooper

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: COOPER, VANESSA | | | Reg #: 58397-018 |
| Date of Birth: 12/19/1973 | Sex: F | Race: BLACK | Facility: ALI |
| Encounter Date: 08/20/2014 08:23 | Provider: McCullar, L. MD | | Unit: B04 |

Sick Call/Triage encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**          **Provider:** McCullar, L. MD

✳

**Chief Complaint:** Lower Extremity Pain

**Subjective:** She reports onset of pain and swelling in the right knee after working out in Rec on last Thursday. Now she is reporting difficulty walking. She reports that Meloxicam is not helping the pain.

**Pain Location:**

**Pain Scale:** 8

**Pain Qualities:**

**History of Trauma:**

**Onset:**

**Duration:**

**Exacerbating Factors:**

**Relieving Factors:**

**Comments:**

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 08/20/2014 | 08:34 ALI | 98.5 | 36.9 | | McCullar, L. MD |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 08/20/2014 | 08:34 ALI | 71 | | | McCullar, L. MD |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 08/20/2014 | 08:34 ALI | 16 | McCullar, L. MD |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 08/20/2014 | 08:34 ALI | 120/78 | | | | McCullar, L. MD |

**Exam:**

**General**
  **Appearance**
    Yes: Alert and Oriented x 3

**Pulmonary**
  **Auscultation**
    Yes: Clear to Auscultation

**Cardiovascular**
  **Auscultation**
    Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2
    No: M/R/G

**Musculoskeletal**

| Inmate Name: | COOPER, VANESSA | | | Reg #: | 58397-018 |
|---|---|---|---|---|---|
| Date of Birth: | 12/19/1973 | Sex: F   Race: BLACK | | Facility: | ALI |
| Encounter Date: | 09/15/2014 14:37 | Provider: McCullar, L. MD | | Unit: | B04 |

## ASSESSMENT:

Unspecified internal derangement of knee, 717.9 - Current, Temporary/Acute, Not Improved/Same

## PLAN:

**Renew Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 20502-ALI | Ibuprofen 800 MG Tab | 09/15/2014 14:37 | Take one tablet by mouth three times daily with food as needed for pain x 60 day(s) |

**Indication:** Leiomyoma of uterus, unspecified, Unspecified polyarthropathy or polyarthritis, Unspecified internal derangement of knee

**One Time Dose Given:** No

**New Consultation Requests:**

| Consultation/Procedure | Due Date | Priority | Translator | Language |
|---|---|---|---|---|
| Radiology | | | No | |

**Reason for Request:**

MRI of the right knee.  This is a 40 year-old lady who has positive anterior drawer and Lachman's tests of the right knee.  The knee has continued to give away and be painful and swollen after an injury in mid August 2014 while working out.

**Provisional Diagnosis:**

Suspect anterior cruciate ligament tear of the right knee.

**Disposition:**

Follow-up at Sick Call as Needed
Follow-up at Chronic Care Clinic as Needed

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 09/15/2014 | Counseling | Plan of Care | McCullar, L. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** No
**Telephone/Verbal Order:**  No

Completed by McCullar, L. MD on 09/18/2014 07:46

| Inmate Name: | COOPER, VANESSA | | | Reg #: | 58397-018 |
|---|---|---|---|---|---|
| Date of Birth: | 12/19/1973 | | | Facility: | ALI |
| Encounter Date: | 10/06/2014 12:39 | Sex: F   Race: BLACK | | Unit: | B04 |
| | | Provider: McCullar, L. MD | | | |

**Exam:**

**Auscultation**

Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2

No: M/R/G

**Musculoskeletal**

Right shoulder with abduction only to approximately 70 degrees . Moderate pain and decreased range of motion.

**ASSESSMENT:**

Shoulder (pain in joint, shoulder region), 719.41 - Current, Temporary/Acute, Initial

**PLAN:**

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Ibuprofen Tablet | 10/06/2014 12:39 | 800 mg Orally  -  three times a day x 3 day(s) -- as needed for pain.  Take with food. |

**Indication:** Shoulder (pain in joint, shoulder region)

**Start Now:** Yes

**Night Stock Rx#:** 22936-ali

**Source:** Night Stock

**Admin Method:** Self Administration

**Stop Date:** 10/09/2014 12:38

**MAR Label:**

**One Time Dose Given:** No

| | | | |
|---|---|---|---|
| | Ketorolac Injection 30 MG/ML | 10/06/2014 12:39 | 2 ml Intramuscularly Gluteal, Right one time x 1 day(s) Pill Line Only |

**Indication:** Shoulder (pain in joint, shoulder region)

**One Time Dose Given:** No

**Disposition:**

Follow-up at Sick Call as Needed

Follow-up at Chronic Care Clinic as Needed

**Other:**

She was advised to report to Medication pick-up for Motrin Rx.  She has not picked up the previous prescription.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 10/06/2014 | Counseling | Plan of Care | McCullar, L. | Verbalizes Understanding |

# Bureau of Prisons
# Health Services
# Medical Duty Status

Reg #:  58397-018                          Inmate Name:   COOPER, VANESSA

## Housing Status

__ confined to the living quarters except   __ meals      __ pill line   __ treatments     Exp. Date: _____

__ on complete bed rest:   __ bathroom privileges only                                    Exp. Date: _____

X_ cell:   __ cell on first floor   __ single cell   X_ lower bunk   __ airborne infection isolation   Exp. Date:   03/15/2015

__ other: _____   Exp. Date: _____

## Physical Limitation/Restriction

X_ all sports                                                                             Exp. Date:   12/31/2014

__ weightlifting:   __ upper body   __ lower body                                         Exp. Date: _____

__ cardiovascular exercise:   __ running   __ jogging   __ walking   __ softball          Exp. Date: _____
    __ football   __ basketball   __ handball   __ stationary equipment

__ other: _____   Exp. Date: _____

## May have the following equipment in his/her possession

| Equipment | Start Date | End Date | Return Date |
|---|---|---|---|
| Brace - knee | 08/20/2014 | 09/05/2014 | |

## Work Restriction / Limitation:

Cleared for Food Service:   Yes   _____

Restriction _____                Expiration Date

No Upper Bunk                                                                03/15/2015

Sedentary Work Only                                                         11/28/2014

**Comments:**   Care level 2

SEDENTARY WORK ONLY THROUGH 11/28/2014 due to RIGHT KNEE INJURY.

McCullar, L. MD                                    10/24/2014
Health Services Staff                                  Date

Inmate Name: _____   **COOPER, VANESSA**      Reg #:   **58397-018**   Quarters:   **B04**

*ALL EXPIRATION DATES ARE AT 24:00*

BP-A148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Warden Washington Addai | DATE: 10-21-14 |
|---|---|
| FROM: Cooper Vanessa | REGISTER NO.: 58397-018 |
| WORK ASSIGNMENT: Food Service | UNIT: B-4 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

I am the one with the leg that stop working right. I came here in March my leg stopped working in June. I've been to sick call numerous times only to be told I will be on the call out. The last time I went, I was told they do not have the equipment to find out what is wrong and I need to go out to the hospital. That was 2 mos ago. This has never happened to me before so I can't even come up with a reason for what has happened to me. People are asking me if I had a stroke! Had I don't know. Please help me. Vanessa Cooper

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER        **SECTION 6**

# PICKENS COUNTY MEDICAL CENTER
## Department of Imaging Services

241 Robert K Wilson Drive  •  Carrollton, Alabama 35447  •  Phone: (205) 367-8111  •  Fax: (205) 367-8973

| Location | Medical Record Number | Account Number | Room |
|----------|----------------------|----------------|------|
| P.RAD | H000071583 | I004154951 | |

| Procedure Date | Ordering Physician | Procedure Description |
|----------------|-------------------|----------------------|
| 11/17/2014 | Linda F McCullar, MD | 004851360 - MR Right Knee without Contrast |

EXAMINATION:  MRI right knee without contrast

AVAILABLE CLINICAL INFORMATION:  Knee pain.  No known injury.

TECHNIQUE:  Multispin multiplanar imaging obtained through the right knee without contrast.

FINDINGS:  There is an oblique tear through the posterior horn medial meniscus. Remaining meniscal structures are intact.  The cruciate and collateral ligaments are appropriate.  There is moderate cartilage thinning throughout the lateral compartment.  There is no significant joint effusion.  Popliteal fossa is clear. Musculature is appropriate.

IMPRESSION:
1. Prominent tear posterior horn medial meniscus.
2. Cartilage thinning within the lateral compartment.

*** THIS IS AN ELECTRONICALLY VERIFIED REPORT ***
11/17/2014 3:18 PM:   Jason R Bearden, MD

22F:JRB:md.beaj  1918795
DD: 11/17/2014 at 15:18
DT: 11/17/2014 at 15:18

Technologists:  PRAD.RIJK6



Magnetic Resonance Imaging                                        Copy for McCullar, Linda F, MD

| | | | |
|---|---|---|---|
| Inmate Name: COOPER, VANESSA | | | Reg #: 58397-018 |
| Date of Birth: 12/19/1973 | Sex: F   Race: BLACK | | Facility: ALI |
| Encounter Date: 11/17/2014 16:05 | Provider: McCullar, L. MD | | Unit: B04 |

**PLAN:**

**Disposition:**

Follow-up at Sick Call as Needed

**Other:**

Will f/u after the MRI results are back.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 11/17/2014 | Counseling | Plan of Care | McCullar, L. | Verbalizes Understanding |

**Copay Required:** Yes          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by McCullar, L. MD on 12/01/2014 16:46

Inmate Request to Staff Response
Cooper, Vanessa
Register No. 58397-018

This is in response to an Inmate Request to Staff wherein you state your
leg stopped working in June.  You would like to be evaluated to find
out the reason this happened.

A review of your medical record reveals you were evaluated on
October 24, 2014, by the Physician for complaint of pain and swelling
of the right knee with limited movement; and slow improvement of the
right shoulder.  During the visit, the Physician noted fair
range-of-motion of the right shoulder and right knee with minimal
flexion.  The Physician diagnosed you with shoulder pain and
unspecified internal derangement of knee.  The Physician renewed your
routine chronic care medications, to include Ibuprofen for pain.  A
radiology consultation of the shoulder was submitted and performed.
The findings of the right shoulder x-ray were negative. You were advised
by the Physician an MRI of the right knee was approved and will be
scheduled.  At this time, the MRI of the right knee has been scheduled.

I trust this responds to your request.

_____          _____
A. Washington-Adduci, Warden               Date

11.19.14

# Bureau of Prisons
# Health Services
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Inmate Name: | COOPER, VANESSA | | Reg #: | 58397-018 |
| Date of Birth: | 12/19/1973 | Sex:     F     Race: BLACK | Facility: | ALI |
| Note Date: | 01/12/2015 06:52 | Provider:   Negron, Ivan MD/RMD | Unit: | B04 |

Review Note encounter performed at Health Services.
**Administrative Notes:**

    **ADMINISTRATIVE NOTE   1**        **Provider:**  Negron, Ivan MD/RMD
       MRI Report Reviewed.

       IMPRESSION:
       1. Prominent tear posterior horn medial meniscus.
       2. Cartilage thinning within the lateral Compartment.

       Plan
       1. Continue with self instructed Physical Therapy and NSAIDs.
       2. Consider Ortho Consult if sx persist after conservative management.

**Disposition:**

    Return To Sick Call if Not Improved

**Copay Required:** No        **Cosign Required:**  No
**Telephone/Verbal Order:**   No

Completed by Negron, Ivan MD/RMD on 01/12/2015 07:00

## Aubrey Collins - Cooper, Vanessa # 58397-018 Informal Resolution

| | |
|---|---|
| **From:** | Aubrey Collins |
| **To:** | Ella Taylor |
| **Date:** | 1/24/2015 4:26 PM |
| **Subject:** | Cooper, Vanessa # 58397-018 Informal Resolution |
| **CC:** | Richard Griffin |
| **Attachments:** | Cooper, Vanessa # 58397-018.pdf |

Please see attached documents and schedule I/M Cooper to be seen regarding her issue at your convenience.

Thanks,

**A. Collins**
B4 Case Manager
FCI Aliceville
P.O. Box 445
Aliceville, AL. 35442
205 373-5000  Ext. 5164
a4collins@bop.gov

# FEDERAL CORRECTIONAL INSTITUTION
## ALICEVILLE, ALABAMA
## INFORMAL RESOLUTION FORM

Inmate Name: _Vanessa Cooper_          Reg. No. _58397-018_
Unit: _B-4_                            Date: _1-16-15_

**NOTICE TO INMATE:** You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), you **must** attempt to informally resolve your complaint through your Correctional Counselor. Please follow the three steps listed below:

1. State your complaint: _I came here to FCI Aliceville in March, when I got here I walked normal. I exercised I played baseball jogged. I did this for the first 3 mos. then one day I woke up for breakfast and I could not walk with out straighting out my leg, by the time I got down the stairs in my unit, I could not walk without_

   (If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))

2. State what actions you have made to informally resolve your complaint: _I went to sick call at least 6 different times then I talked to my counselor, and I wrote a cop out to the warden I wrote a cop out to the med records_

3. State what resolution you expect: _I expect to know whats wrong with my leg then take action on getting medical attention so I can know how and what I can and can't do._

Inmate's Signature: _Vanessa Cooper_                Date: _1-16-15_

Correctional Counselor's Comments (Steps to Resolve): _Will contact Medical to resolve._

Counselor's Signature: _A Walker_                   Date: _1-24-15_
Unit Manager's Review: _A Walker_                   Date: _1-24-15_
Informally Resolved: _Walker_                       Date: _3-13-15_

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 1-16-15 | 3-13-15 | 3-16-15 | | |
| TIME | 4:20 pm | 9 Am | 9 Am | | |
| COUNSELOR | A. Collins | A. Collins | A. Collins | | |

3/16/15

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Cooper, Vanessa R.          S8397-018      B-4      FCI-Aliceville
　　　LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A- INMATE REQUEST**

I've been to medical numerous times concerning my Rt knee. No solution has been talked about. As a matter of fact I was told by the medical staff not to come back to medical about my knee. Everyday that passes the pain gets worse, sometimes I don't think I'm going to make it to work or back to my unit. I do not want to quit my job or move unless I have surgery, which is what a solution would be, to schedule me for surgery, and I know this not because of medical, but because of my own research I did not come to this prison like this, please help me so I can know what my future holds.

3-26-15 _____          Vanessa Cooper _____
DATE                                         SIGNATURE OF REQUESTER

**Part B- RESPONSE**

_____          _____
DATE                          WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: 816582-F1

**Part C- RECEIPT**
　　　　　　　　　　　　　　　　　　　　　　CASE NUMBER: _____

Return to: _____
　　　　　LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____
DATE

USP LVN          RECIPIENT'S SIGNATURE (STAFF MEMBER)          BP-229(13)

RECEIPT - ADMINISTRATIVE REMEDY

DATE: APRIL 17, 2015

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      ALICEVILLE FCI

TO  : VANESSA COOPER, 58397-018
      ALICEVILLE FCI    UNT: B UNIT    QTR: B04-104L

THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID      : 816582-F1
DATE RECEIVED  : APRIL 7, 2015
RESPONSE DUE   : APRIL 27, 2015
SUBJECT 1      : MEDICAL CARE - IMPROPER OR INADEQUATE
SUBJECT 2      :

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: COOPER, VANESSA | | | Reg #: | 58397-018 |
| Date of Birth: 12/19/1973 | Sex: F | Race: BLACK | Facility: | ALI |
| Encounter Date: 04/30/2015 12:47 | Provider: | Griffin, Richard MD/CD | Unit: | B04 |

Chronic Care - Chronic Care Clinic encounter performed at Health Services.

## SUBJECTIVE:

**COMPLAINT 1**        **Provider:** Griffin, Richard MD/CD

**Chief Complaint:** OB/GYN

**Subjective:**    menses regular, heavy with clots. known fibroids, endometrial biopsy 2014, unknown results.
cycled on OCPs last year with good results.
periods are 12 days long, clots, quite a bit.

16 weeks uterus with fibroids, no adnexal masses

pap smear taken

**Pain:**     No

---

**COMPLAINT 2**        **Provider:** Griffin, Richard MD/CD

**Chief Complaint:** ORTHOPEDIC/RHEUMATOLOGY

**Subjective:**    right knee hurts, cannot walk normally. not doing physical therapy. MRI shows meniscal tear.
request for knee surgery has been denied and physical exercises recommended.

PLAN ibuprofen 800 BID for 90 days
knee rehabilitive exercises sheet given

call out in 6 months

**Pain:**   Yes

**Pain Assessment**

| | |
|---|---|
| **Date:** | 04/30/2015 13:07 |
| **Location:** | Knee-Right |
| **Quality of Pain:** | Aching |
| **Pain Scale:** | 6 |
| **Intervention:** | exercises |
| **Trauma Date/Year:** | |
| **Injury:** | |
| **Mechanism:** | |
| **Onset:** | 6-12 Months |
| **Duration:** | <30 Minutes |
| **Exacerbating Factors:** | activity |
| **Relieving Factors:** | rest |
| **Comments:** | |

**Seen for clinic(s):** OB GYN, Orthopedic/Rheumatology

**Added to clinic(s):** OB GYN, Orthopedic/Rheumatology

## OBJECTIVE:
**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | |
|---|---|---|
| Inmate Name:  COOPER, VANESSA | | Reg #:  58397-018 |
| Date of Birth:  12/19/1973 | Sex:  F  Race:  BLACK | Facility:  ALI |
| Encounter Date:  05/06/2015 10:35 | Provider:  Griffin, Richard MD/CD | Unit:  B04 |

Physician - Evaluation encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**          **Provider:** Griffin, Richard MD/CD

**Chief Complaint:** ORTHOPEDIC/RHEUMATOLOGY

**Subjective:**   review of MRI results at Warden's request. MRI report and Regional Medical Director review discussed with her.
   She started the rehabitation exercises on 4/30 and needs to give it good effort until 6/30. She has made some progress with the exercises.

   EXAM normal passive ROM right knee, no effusion, there is tenderness to collateral ligament test to medial ligament.

   ASSESS posterior medial meniscus tear and reduced mobility.

   PLAN as above
   call out in about one month.

**Pain:**          Yes

**Pain Assessment**

| | |
|---|---|
| **Date:** | 04/30/2015 13:07 |
| **Location:** | Knee-Right |
| **Quality of Pain:** | Aching |
| **Pain Scale:** | 6 |
| **Intervention:** | exercises |
| **Trauma Date/Year:** | |
| **Injury:** | |
| **Mechanism:** | |
| **Onset:** | 6-12 Months |
| **Duration:** | <30 Minutes |
| **Exacerbating Factors:** | activity |
| **Relieving Factors:** | rest |
| **Comments:** | |

**OBJECTIVE:**

**Exam:**

   **Musculoskeletal**
      **Knee**
         Yes: Normal Passive ROM, Tenderness
         No: Normal Active ROM, Swelling

**ASSESSMENT:**

   Knee, Pain in joint, lower leg, 719.46 - Current, Chronic, Not Improved/Same

**PLAN:**

**Devices and Equipment Issued:**

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: APRIL 30, 2015

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      ALICEVILLE FCI

TO  : VANESSA COOPER, 58397-018
      ALICEVILLE FCI     UNT: B UNIT     QTR: B04-104L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 816582-F1
DATE RECEIVED  : APRIL 7, 2015
RESPONSE DUE   : MAY 17, 2015
SUBJECT 1      : MEDICAL CARE - IMPROPER OR INADEQUATE
SUBJECT 2      :

## REQUEST FOR ADMINISTRATIVE REMEDY

Administrative Remedy No. 816582-F1
Part B - Response

This is in response to your Request for Administrative Remedy No. 816582-F1, received on April 7, 2015, wherein you state there has been no solution in regards to your knee pain.   As relief, you request knee surgery.

A review of your medical record and consultation with staff reveals an MRI of the right knee was performed on November 17, 2014.   The MRI findings revealed prominent tear posterior horn medial meniscus and cartilage thinning within the lateral compartment. The Regional Medical Director reviewed the MRI report and noted treatment plans as follows:  continue with self-instructed physical therapy and pain medication; and consider orthopedic consultation if symptoms persist after conservative management.

On May 6, 2015, you were evaluated by the Clinical Director for complaint of knee pain and to discuss your MRI results.   The Clinical Director evaluated your knee and noted tenderness to the collateral ligament and reduced mobility.   You were advised of the MRI results and the Clinical Director recommended a follow-up evaluation in one month.

Accordingly, your Request for Administrative Remedy is denied, in that FCI Aliceville Health Services staff have evaluated and treated your medical complaints based on Program Statement 6031.04, *Patient Care*, and knee surgery is not recommended at this time.    If you are dissatisfied with this response, you may appeal to the Regional Director at the Southeast Regional Office, 3800 Camp Creek Parkway, S.W., Building 2000, Atlanta, Georgia 30331.   Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

_____                    _5/12/14_____
A. Washington Adduci, Warden                         Date

U.S. Department of Justice

Federal Bureau of Prisons

# Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: [illegible] / [illegible]-018 / [illegible] / [illegible]
LAST NAME, FIRST, MIDDLE INITIAL / REG. NO. / UNIT / INSTITUTION

**Part A - REASON FOR APPEAL** I [illegible] by Regional.

The [illegible] not [illegible]. [illegible] by Regional that the problem with my [illegible] might be a [illegible]. So Regional [illegible] me [illegible] AIFI. The [illegible] the [illegible] regarding a surgery, for a [illegible] and Regional denied it and [illegible] me to [illegible] and start working right. [illegible] because the [illegible] nobody [illegible] cripple man [illegible] handicapped [illegible] for the problem [illegible]?

DATE: [illegible]

SIGNATURE OF REQUESTER: [illegible]

**Part B - RESPONSE**

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE

CASE NUMBER: [illegible]

**Part C - RECEIPT**

CASE NUMBER: ____________

Return to: ____________
LAST NAME, FIRST, MIDDLE INITIAL / REG. NO. / UNIT / INSTITUTION

SUBJECT: ____________

DATE

SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

RECEIPT - ADMINISTRATIVE REMEDY

DATE: JULY 7, 2015

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : VANESSA COOPER, 58397-018
      ALICEVILLE FCI      UNT: B UNIT      QTR: B04-104L

THIS ACKNOWLEDGES THE RECEIPT OF THE REGIONAL APPEAL
IDENTIFIED BELOW:

REMEDY ID      : 816582-R1
DATE RECEIVED  : JUNE 29, 2015
RESPONSE DUE   : JULY 29, 2015
SUBJECT 1      : MEDICAL CARE - IMPROPER OR INADEQUATE
SUBJECT 2      : CONSULTANT REFERRALS, RECOMMENDATIONS

| | | | |
|---|---|---|---|
| Inmate Name: COOPER, VANESSA | | | Reg #: 58397-018 |
| Date of Birth: 12/19/1973 | Sex: F   Race: BLACK | | Facility: ALI |
| Encounter Date: 06/30/2015 12:40 | Provider: Bailey, Sharon RN | | Unit: B04 |

**Exam:**

    **Observation/Inspection**
        Yes: Within Normal Limits
    **Cardiovascular**
    **Observation**
        Yes: Within Normal Limits
    **Musculoskeletal**
    **Gait**
        Yes: Normal Gait

**ASSESSMENT:**

    Initial assessment
    Inmate presented to health services reporting sharp pain on the left side of the chest that comes and goes. Inmate states she has also had transient episodes of tachycardia. Inmate states she also had episodes of heart burn for which she take an OTC chewable acid reducer three tablets every two hours. EKG performed and reviewed by MD WNL. Vital signs stable. No acute distress noted. Breath sounds clear bilaterally. No cough noted. No report of nausea or diaphoresis. Inmate stated last night during peak of episode she was having palpitations with shortness of breath and when she did take a deep breath she would have sharp pain from her left axilla radiating to her heart and down her left arm. Inmate states she is continuing to have sharp pains that come and go. Advised inmate will place on call out for MD and to return to health services if palpitations return or if condition worsens for further evaluation.

**PLAN:**

**Schedule:**

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Sick Call/Triage | 07/07/2015 00:00 | Physician |
| 6/30/15 chest pains, EKG WNL, needs MD follow up | | |

**Disposition:**

    Will Be Placed on Callout

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 06/30/2015 | Counseling | Plan of Care | Bailey, Sharon | Verbalizes Understanding |

**Copay Required:** Yes        **Cosign Required:** Yes
**Telephone/Verbal Order:** No

Completed by Bailey, Sharon RN on 06/30/2015 13:01
Requested to be cosigned by Griffin, Richard MD/CD.
Cosign documentation will be displayed on the following page.

Regional Administrative Remedy Appeal No:   816582-R1
Part B - Response


This is in response to your Regional Administrative Remedy Appeal receipted
June 29, 2015.   You allege a magnetic resonance imaging (MRI) study of your right knee
revealed a torn meniscus, but the Regional Medical Director denied a request for surgery.
You further claim this decision is unacceptable because a doctor told you the surgery is
needed urgently.   As relief, you request surgical intervention.

A review of your medical records revealed you were evaluated by the Staff Physician after
undergoing an MRI of your right knee on November 17, 2014.   The Regional Medical
Director (RMD) reviewed the MRI report, which revealed prominent tear posterior horn
medial meniscus and cartilage thinning within the lateral compartment.   The RMD
recommended self-instructed physical therapy and non-steroidal anti-inflammatory
medication and an orthopedic consultation if your symptoms persist after conservative
medical management has been tried.

You were evaluated by the Clinical Director on April 30, 2015, at which time you admitted
you were not doing physical therapy exercises.   You were provided self-therapy literature
and medication for pain.   Progress with your condition was noted when you were
evaluated by the Clinical Director again on May 6, 2015.   You were advised to make a
good effort to consistently perform your self-therapy exercises and you would be
reevaluated to monitor your progress.   When you were seen in the clinic on June 30,
2015, your chief complaint was of pain in the left side of your chest.   The clinician noted
you presented with a normal gait, and you did not voice any problems pertaining to your
right knee during this encounter.

Should you experience any adverse changes in your condition, return to sick call for
reevaluation.   Medical care will continue to be provided consistent with Bureau of Prisons'
policy.

Accordingly, your Regional Administrative Remedy Appeal is denied.   If dissatisfied with
this response, you may appeal to the Office of General Counsel.   Your appeal must be
received in the Office of General Counsel, Bureau of Prisons, 320 First Street, NW,
Washington, DC, 20534, within 30 calendar days of the date of this response.

7/20/15
Date

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: COOPER, VANESSA | | Reg #: | 58397-018 |
| Date of Birth: 12/19/1973 | Sex: F   Race: BLACK | Facility: | ALI |
| Encounter Date: 10/20/2015 09:00 | Provider: King, M W RN | Unit: | B04 |

Nursing - Sick Call Note encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**     **Provider:** King, M W RN

**Chief Complaint:** Pain

**Subjective:** Inmate stated, "I have swelling to my right foot and it is painful when I walk".

**Pain:** Not Applicable

**OBJECTIVE:**

**Exam:**

*Sensitive But Unclassified*

**General**

**Affect**

Yes: Cooperative, Agitated

**ASSESSMENT:**

Other

Inmate presents to sick call with c/o pain and swelling to her right foot. Inmate alert and oriented x 3. Inmate in NAD. Inmate ambulates with using a cane. No respiratory difficulties noted or reported. Inmate is upset because she states ,"I was here all day yesterday and got sent back". Inmate was advised to remain in health service to have her foot assessed. Inmate left health service prior to being assessed.

**PLAN:**

**Disposition:**

Follow-up at Sick Call as Needed

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 10/20/2015 | Not Done | | King, M | Unable to Demonstrate |

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by King, M W RN on 10/20/2015 12:24
Requested to be cosigned by Griffin, Richard MD/CD.
Cosign documentation will be displayed on the following page.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 13, 2015

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : VANESSA COOPER, 58397-018
      ALICEVILLE FCI      UNT: B UNIT      QTR: B04-104L
      P.O. BOX 445
      ALICEVILLE, AL 35442


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 816582-A1        CENTRAL OFFICE APPEAL
DATE RECEIVED  : AUGUST 24, 2015
SUBJECT 1      : MEDICAL CARE - IMPROPER OR INADEQUATE
SUBJECT 2      : CONSULTANT REFERRALS, RECOMMENDATIONS
INCIDENT RPT NO:

REJECT REASON 1: ALL FOUR PAGES OF YOUR (BP-9) (BP-10)  (BP-11) FORM MUST BE
                 LEGIBLE AND WORDED THE SAME. PHOTOCOPIES OF THE FORM WILL
                 NOT BE ACCEPTED.

REJECT REASON 2: YOU MAY ONLY SUBMIT ONE CONTINUATION PAGE, EQUIV. OF ONE
                 LETTER-SIZE (8.5 X 11) PAPER.  TEXT ON ONE SIDE.  THE
                 TEXT MUST BE LEGIBLE.

REJECT REASON 3: YOU DID NOT SUBMIT PROPER NUMBER OF CONTINUATION PAGES
                 WITH YOUR REQUEST/APPEAL.  2 - WARDEN'S LEVEL; 3 -
                 REGIONAL LEVEL; AND 4 - CENTRAL OFFICE LEVEL.  THE
                 NUMBER CITED INCLUDES YOUR ORIGINAL.

REJECT REASON 4: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 15 DAYS OF THE DATE OF THIS REJECTION NOTICE.

*Counselor Flowers*
*delivered on*
*USPS, 10-1-15*

RECEIVED
FCI ALICEVILLE
WARDEN OFFICE

2015 SEP 24  AM 10 54

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Cooper,Vanessa R__     __58397-018__     __B-4__     __FCI-ALICEVIL__
    LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL** This is in response to my Regional Appeal denial. First Regional stated that I alleged a MRI study of my Right Knee revealed a torn meniscus, as if it were not true. I did not know my meniscus was torn until the clinician here at FCI-Aliceville told me, and , at that time the Clinician also told me I would need a surgery. This is a fact that is in my medical records. Regional also stated that, "as relief, I request surgical intervention, so Regional knows that I need relief, so why am I being denied surgery that is needed. I have attached to this a response to other statements Regional made in part-B Response

__11-14-15__
DATE

__Vanessa Cooper__
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

OCT 31 2015

Administrative Remedy Section

RECEIVED

DEC 10 2015   (A3)

Administrative Remedy Section
Federal Bureau of Prisons

RECEIVED

MAR 1 4 2016

BY: _____

_____      _____
DATE                            GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE      CASE NUMBER: __816582__-__A3__

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____
DATE        SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN      PRINTED ON RECYCLED PAPER      BP-231(13)
JUNE 2002

RECEIPT - ADMINISTRATIVE REMEDY

DATE: JANUARY 6, 2016

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : VANESSA COOPER, 58397-018
      ALICEVILLE FCI     UNT: B UNIT     QTR: B04-104L

THIS ACKNOWLEDGES THE RECEIPT OF THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW:

REMEDY ID       : 816582-A3
DATE RECEIVED   : DECEMBER 10, 2015
RESPONSE DUE    : FEBRUARY 8, 2016
SUBJECT 1       : MEDICAL CARE - IMPROPER OR INADEQUATE
SUBJECT 2       : CONSULTANT REFERRALS, RECOMMENDATIONS

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: JANUARY 6, 2016

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : VANESSA COOPER, 58397-018
      ALICEVILLE FCI     UNT: B UNIT     QTR: B04-104L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 816582-A3
DATE RECEIVED  : DECEMBER 10, 2015
RESPONSE DUE   : FEBRUARY 8, 2016
SUBJECT 1      : MEDICAL CARE - IMPROPER OR INADEQUATE
SUBJECT 2      : CONSULTANT REFERRALS, RECOMMENDATIONS

**Administrative Remedy No. 816582-A3**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal wherein you allege you are being denied knee surgery.
For relief, you request to be approved for surgery.

We have reviewed documentation relevant to your appeal and,
based on the information gathered, concur with the manner in
which the Regional Director addressed your concerns at the time
of your appeal.  Our subsequent review show you were evaluated
by the institution Clinical Director (CD) on November 24, 2015,
who noted no improvement to your right knee despite knee
exercises and a brace.  As a result, the CD submitted a
consultation request for evaluation by an orthopedic specialist.

You will be scheduled to see the orthopedic specialist in the
near future and further treatment will be considered based on
the orthopedic specialist's recommendations.  Records reflect
you are currently provided with a cane and lower bunk pass, as
well as Ibuprofen for pain.

The record reflects you are receiving medical care and treatment
in accordance with evidence based standard of care and within
the scope of services of the Federal Bureau of Prisons.  You are
encouraged to comply with proposed medical treatment so Health
Services can continue to provide essential care and to contact
medical personnel through routine sick call procedures should
your knee condition worsen.

Based on the forgoing, this response is provided for
informational purposes only.


1/22/16
Date


National Inmate Appeals

Fax Server          2/23/2016  11:05  PAGE 2/2   Fax Server

58397-018

# PICKENS COUNTY MEDICAL CENTER
## Department of Imaging Services

241 Robert K Wilson Drive  •  Carrollton, Alabama 35447  •  Phone: (205) 367-8111  •  Fax: (205) 367-8973



| Location P.RAD | Medical Record Number H000071563 | Account Number I004587275 | Room |
| --- | --- | --- | --- |

| Procedure Date 02/23/2016 | Ordering Physician Richard Griffin, MD | Procedure Description 005306552 - Right Knee, Three Views |
| --- | --- | --- |

AVAILABLE CLINICAL INFORMATION:  Right knee pain.

Right knee, three views, 02/23/2016, 10:16 hours

Minimal fluid knee joint.  Minor hypertrophic bony changes posterior patella.  Slight narrowing of joint space medially in relation to laterally.  No acute fracture.

IMPRESSION:  Only minor hypertrophic bony changes without acute fracture or malalignment noted.

*** THIS IS AN ELECTRONICALLY VERIFIED REPORT ***
2/23/2016 11:02 AM:  J Alexander Lushington, Jr, MD

22F:JAL:md.lusa  2335785
DP: 02/23/2016 10:18
DD: 02/23/2016 11:02
DT: 02/23/2016 11:02

Technologists: PRAD.CAMT

J Alexander Lushington, Jr, MD

Diagnostic Imaging and Fluoroscopy                                    Copy for Griffin, Richard, MD

# PALAN DIAGNOSTICS

## 3790 FOREST AVE.
## YORBA LINDA, CA 92886

NAME: COOPER, VANESSA

MRN: 58397-018

FACILITY:

REFERRING PHYSICIAN:   PEIKAR

EXAM DATE:   5/19/2017

DOB:   12/19/1973

ROOM:

FAX:

| US | PELVIS |
|---|---|

FINDINGS:
The uterus is enlarged and heterogeneous, difficult to accurately measure. The size is estimated at 20 cm x 9.3 cm x 18 cm. There is diffuse heterogeneity and multiple fibroids intermixed with scattered calcifications, particularly toward the fundus. The adnexa are obscured. There is no free fluid in the pelvis.

IMPRESSION:
1. Enlarged fibroid uterus, difficult to fully visualize.
2. Obscuration of both adnexa.
3. Further evaluation with a pelvic MRI may be helpful if clinically indicated.

ELECTRONICALLY SIGNED BY:  THOMAS L. ATLAS M.D.

5/23/2017 1:11:58 PM

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) Vanessa Cooper  58397-018 FCI Aliceville, Aliceville, Alabama P.O. Box 4000      35442 |
|---|---|

| 3. TYPE OF EMPLOYMENT ☐ MILITARY  ☐ CIVILIAN | 4. DATE OF BIRTH 12-19-73 | 5. MARITAL STATUS single | 6. DATE AND DAY OF ACCIDENT Friday Aug 21, 2014 | 7. TIME (A.M. or P.M.) 5:00 pm |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)  Inadequate Medical Treatment. I came here to FCI Aliceville Mar 21, 2014. I hurt my right Knee in Aug 2014, When my leg did not heal the former Doctor here, Dr McCullur told me I am going to need a surgery for torn cartilage. I went out to get a MRI in Nov 2014, I found out I have a torn meniscus and I would need surgery. Continued on separate sheet of paper.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

n/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

Personal Injury

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.  Prominent tear posterior horn medial meniscus and cartilage thinning within the lateral compartment.

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Mostly everyone here in the Aliceville Prison | Same as above |

**12. (See instructions on reverse)     AMOUNT OF CLAIM (In dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| $2400.00 | $14,000,000.00 | -0- | $14,002,400.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) Vanessa Cooper | 13b. Phone number of signatory none | 14. DATE OF CLAIM 6-16-16 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109
Previous editions not usable.
Designed using Perform Pro, WHS/DIOR, Jun 98

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85) (EG)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

Arit J. Lillian
Page 1 of 3

Vanessa Cooper  58297-018
FCI Aliceville
Aliceville, Alabama
P.O. Box 4000   35442

I was in a wheelchair for about
5 days until I was told to give it back
because I can't use the elevator everyday.
So I had to learn how to walk without
falling down, but most of all I had to
learn how to deal with the pain. At
this time I had no cain or anything
to help me walk, so I straightened
out my right knee and locked it in
so I can walk, I do not bend my
right leg at the knee when I walk.
My right knee and my right foot swoll
up so big that Dr. McCullar gave me
Ibprofin for inflammation. Dr. McCullar
told me she did not want me on the
Ibprofin to long because it will damage
my liver. Now the Warden and the
Medical Staff here are using Ibprofin 800
as a plan of action for this torn meniscus.
I received a cane and a physical
therapy packet on 4-30-2015. On 5-6-2015
the new Doctor here, Dr Griffin told me
to make sure I am doing the physical
therapy exercises because if I am not
doing them they know because I will not
be healed. At the end of 2015 I had a

Vanessa Cooper 58~97-018

Page 2 of 3

follow-up appointment with Dr. Griffin, he noted that nothing has changed with my right knee. I told him I was doing the exercises I just have problems with swelling and pain after I do them. Especially when I try to do the step-up. At that time Dr. Griffin informed me I can't do steps, I told him, he gave me a physical therapy packet, that has steps and wall scwats and you told me I have to do them. Now almost ~months later your telling me not to do them. When I go to sick-call because of the swelling in my knee and foot the nurses say I'm faking and it should have healed already. Then the FBOP sent me back out to see the orthopedic he told me I need a surgery this was in Feb the 23, of 2016. He also told me I should not be walking on my leg or standing to much and definately should not be doing any physical therapy until after the surgery, because it is making my tear worse. Well here at FCI Aliceville we have to work or we will go into refusal on our FRP payment. Plus the Warden makes us work. Warden - Adduci saw me sitting

page 3 of 3

down once at work and she told me to
get up she is not paying me to sit down.
The orthopedic also informed me that my
tear is not going to heal. Torn meniscus
don't heal so when Dr. Britten ordered
another MRI the orthopedic did not perform
it because he said if my meniscus was
torn 2 years ago it's still torn now, so
instead of an MRI he did a x-ray to
see how bad my bone has gotten since
I've been walking straight legged for
22 months now. He also said hopefully
the surgery will be enough since I've
been walking on it for so long. The
reason I can't walk right is because
of the torn cartilage that is in my
knee needs to be surgically removed!
But the Warden, the Regional Director,
the Administrator National Inmate
Appeals have all together agreed to
use their plan of action which is a
cane and Ibprofin 800 with a bottom
bunk pass. This is inadequate medical
treatment and it needs to be corrected.



**U. S. Department of Justice**

Federal Bureau of Prisons

*Southeast Regional Office*
*3800 Camp Creek Pkwy SW*
*Bldg 2000*
*Atlanta, GA 30331*

**CERTIFIED MAIL**
**7014 2120 0003 4453 1894**

Vanessa Cooper
Reg. No. 58397-018
FCC Victorville, Med, II, Camp
P.O. Box 5300
Adelanto, CA 92301

RE:     **Administrative Tort Claim Number: TRT-SER-2016-05214**

Dear Claimant:

Your claim has been considered for administrative settlement under the Federal Tort Claims Act
("FTCA"), Title 28, United States Code (U.S.C.), Section 2672 *et seq.*, and the authority
accorded by Title 28, Code of Federal Regulations (C.F.R.), Section 0.172.  Under Section 2672
of the FTCA, each federal agency has been delegated the authority to consider, determine, and
settle any claim for money damages against the United States for personal injury or loss of
personal property caused by the negligent or wrongful act or omission of an employee acting
within the scope of his or her office or employment.

We have investigated your claim, and the investigation did not indicate you suffered an injury or
loss caused by the negligence of a Bureau of Prisons employee acting within the scope of his or
her employment.  Accordingly, your FTCA claim is denied.  If you are dissatisfied with our
determination, you have six (6) months from the mailing date of this letter to file suit in an
appropriate United States District Court.

Sincerely,

Supervisory Attorney

Date: 1/9/17

# Knee Exercises

## If my knee hurts, why exercise?

Having strong, flexible muscles is the best way to keep knees healthy and prevent further injury.

### Strength

Strengthening the muscles that support your knee will reduce stress on your knee joint. Strong muscles in the front of your thigh (quadriceps) and back of your thigh (hamstrings) help your knee joint absorb shock. The less strain on your knee, the better the chances are for pain relief and preventing further injury.

### Flexibility

Stretching the muscles that you strengthen is an important part of preventing injury. Strengthening exercises build muscle to help support your knee, but can also tighten the muscles. Tight muscles are more prone to injury. Gentle stretching after strengthening exercise reduces muscle soreness and will keep your muscles long and flexible.



Quadriceps muscles at front of thigh.



Hamstring muscles at back of thigh.

## How do I start exercising?

Your doctor or physical therapist will tell you which exercises are right for you.

**Start slowly.** Building muscle strength takes time. As you get stronger, gradually increase the number of exercise repetitions or add weight to an exercise.

**Do not ignore pain.** You should not feel serious pain during an exercise. You might feel discomfort because you are challenging your muscles, but not pain. If an exercise hurts, stop the exercise.

**Do not overdo it.** You should not feel serious pain after exercise. It is typical to feel stiff or a bit sore the day after you exercise. If you feel so sore that it is difficult to move, then you have overdone your exercise. Rest is the best thing for your sore muscles.

**Ask questions.** Talk to your doctor or therapist if you have any pain or are unsure of how many exercises to do, or how often to do them.

## Strengthening Exercises

*Warm up with 5-10 minutes of low impact activity, like walking or cycling, before doing these exercises*

*Straight-Leg Lift*



*You should feel this exercise mostly in the front of your thigh.*

Lie on your back with one leg bent and the other straight. Tighten the thigh muscles in your straight leg and slowly lift it until it is about a foot off the floor. Hold it for 3 to 5 seconds. Slowly lower your leg to the floor. Repeat and switch sides.

**Do:** Keep your upper body relaxed and tighten your stomach muscles to keep your low back flat against the floor.

**Do not:** Arch your back. Do not lift your leg too high with a jerking motion.

## Single-Leg Dip



*You should feel this exercise in the front and back of your thigh, hip, and buttocks.*

Place two chairs on either side of you to help with balance. Lift one leg slightly in front of you. Plant your weight on the other leg. Slowly lower yourself down a few inches, pushing your weight onto the heel of your supporting leg. Hold for 3 to 5 seconds. Slowly straighten up. Repeat and switch sides.

**Do:** Sit back as if there was a chair behind you.

**Do not:** Let the knee of your supporting leg move forward over your toes.

## Hamstring Curls



*You should feel this exercise at the back of your thigh.*

Hold on to the back of a chair for balance. Plant your weight onto your supporting leg. Lift the other foot and bring the heel up toward your buttocks. Hold for 3 to 5 seconds. Slowly lower your leg. Repeat and switch sides.

**Do:** Keep your knees close together.

**Do not:** Lock the knee of your supporting leg. Do not bring your heel up past a 90 degree angle.

### *Knee Stabilzation Series*



*You will feel these exercises on all sides of your thigh, your hip and buttocks.*

Hold onto the back of a chair for balance. Slightly lift one leg. Plant your weight on your supporting leg. Tighten your thigh muscles in your lifted leg and slowly move it in the direction shown. Hold for 3 to 5 seconds. Slowly return to start and repeat. Turn your body 90 degrees to begin the next exercise in the series.

**Do:** Focus on your supporting leg. It is working just as hard as the moving leg.

**Do not:** Lock the knee of your supporting leg. Do not arch your back or lean to either side during these exercises.

### *Wall Squat*



*You should feel this exercise mostly in the front of your thighs.*

Stand with your head, back, and hips against a wall. Step your feet out about 2 feet from the wall, hipwidth apart. Slowly slide down the wall until you are almost in a sitting position. Hold for 5 to 10 seconds, then slowly slide up. Repeat.

**Do:** Keep your abdominal muscles tight. Hold the position longer as you get stronger.

**Do not:** Slide your hips down lower than your knees. Do not let your knees move forward over your toes.

### *Step Ups*



*You should feel this exercise in the front and back of your thigh, your hip, and buttocks.*

Use a 6-inch high stool or platform. Step one foot onto the platform. Lift your other foot off the floor, letting it hang loosely off the platform. Try to hold for 3 to 5 seconds. Slowly lower your hanging foot to the floor, then bring your stepping foot down. Repeat and switch sides.

**Do:** Make sure when you step up that your whole foot is on the platform.

**Do not:** Lock the knee that is stepping on the platform.

## Stretching Exercises

### *Quadricep Stretch*



*You should feel this stretch in the front of your thigh.*

Hold on to a wall or the back of a chair for balance. Lift one foot and bring your heel up toward your buttocks. Grasp your ankle with your hand and pull your heel closer to your body. Hold the stretch for 30 seconds.

**Do:** Keep your knees close together. Stop bringing your heel closer when you feel the stretch.

**Do not:** Arch or twist your back.

### *Hamstring Stretch*



*You should feel this stretch at the back of your thighs and behind your knees.*

Sit up tall with both legs extended straight in front of you. Your feet are neutral — not pointed or flexed. Place your palms on the floor and slide your hands toward your ankles. Hold for 30 seconds.

**Do:** Keep your chest open and back long. Reach from your hips. Stop sliding your palms forward when you feel the stretch.

**Do not:** Round your back or try to bring your nose to your knees. Do not lock your knees.

# AAOS
AMERICAN ACADEMY OF
ORTHOPAEDIC SURGEONS

Prepared for: _____

Prepared by: _____

## OrthoInfo
*Your orthopaedic connection to expert information about bones, joints, and muscles*
www.orthoinfo.org

# Spine Conditioning Program

## Purpose of Program

After an injury or surgery, an exercise conditioning program will help you return to daily activities and enjoy a more active, healthy lifestyle. Following a well-structured conditioning program will also help you return to sports and other recreational activities.

This is a general conditioning program that provides a wide range of exercises. To ensure that the program is safe and effective for you, it should be performed under your doctor's supervision. Talk to your doctor or physical therapist about which exercises will best help you meet your rehabilitation goals.

**Strength:** Strengthening the muscles that support your spine will help keep your back and upper body stable. Keeping these muscles strong can relieve back pain and prevent further injury.

**Flexibility:** Stretching the muscles that you strengthen is important for restoring range of motion and preventing injury. Gently stretching after strengthening exercises can help reduce muscle soreness and keep your muscles long and flexible.

**Target Muscles:** The muscle groups targeted in this conditioning program include:

- Cervical spine (neck)
- Trapezius (neck and upper back)
- Latissimus dorsi (side and middle back)
- Back extensors and erector spinae (middle and lower back)
- Quadratus lumborum (lower back)
- Abdominals
- External oblique rotators (side and lower back)
- Internal oblique rotators (side and lower back)
- Piriformis (buttocks)
- Gluteus maximus (buttocks)
- Gluteus medias (buttocks)
- Hamstrings (back of thigh)

**Length of program:** This spine conditioning program should be continued for 4 to 6 weeks, unless otherwise specified by your doctor or physical therapist. After your recovery, these exercises can be continued as a maintenance program for lifelong protection and health of your shoulders. Performing the exercises two to three days a week will maintain strength and range of motion in your back.

## Getting Started

**Warm up:** Before doing the following exercises, warm up with 5 to 10 minutes of low impact activity, like walking or riding a stationary bicycle.

**Stretch:** After the warm-up, do the stretching exercises shown on Page 1 before moving on to the strengthening exercises. When you have completed the strengthening exercises, repeat the stretching exercises to end the program.

**Do not ignore pain:** You should not feel pain during an exercise. Talk to your doctor or physical therapist if you have any pain while exercising.

**Ask questions:** If you are not sure how to do an exercise, or how often to do it, contact your doctor or physical therapist.

*AAOS does not endorse any treatments, procedures, products, or physicians referenced herein. This information is provided as an educational servic̶ not intended to serve as medical advice. Anyone seeking specific orthopaedic advice or assistance should consult his or her orthopaedic surgeon.*

Intro.

**OrthoInfo** *Your orthopaedic connection to expert information about bones, joints, and muscles*
www.orthoinfo.org

# Spine Conditioning Program
## STRETCHING EXERCISES

## 1. Head Rolls

| Repetitions |
|---|
| 3 sets of 3 |

| Days per week |
|---|
| Daily |

**Main muscles worked:** Cervical spine muscles, trapezius
You should feel this stretch all around your neck and into your upper back

**Equipment needed:** None



**Step-by-step directions**

- Sit in a chair or stand with your weight evenly distributed on both feet.
- Gently bring your chin toward your chest.
- Roll your head to the right and turn so that your ear is over your shoulder (1). Hold for 5 seconds.
- Gently roll your head back toward your chest and to the left. Turn your head so that your ear is over your left shoulder (2). Hold for 5 seconds.
- Slowly roll your head back and in a clockwise circle three times (3).
- Reverse directions and slow roll your head in a counterclockwise circle three times (4).

| Tip | Do not shrug your shoulders up during this exercise. |
|---|---|

## 2. Kneeling Back Extension

| Repetitions |
|---|
| 10 |

| Days per week |
|---|
| Daily |

**Main muscles worked:** Quadratus lumborum, erector spinae
You should feel this stretch in your lower back and your abdominals

**Equipment needed:** None





**Step-by-step directions**

- Begin on your hands and knees with your shoulders positioned over your hands.
- Rock forward onto your arms, round your shoulders and allow your low back to drop toward the floor. Hold for 5 seconds.
- Rock backward and sit your buttocks as close to your heels as possible. Extend your arms and hold for 5 seconds.

| Tip | Look down on the floor to keep your neck in alignment with your spine. |
|---|---|

*AAOS does not endorse any treatments, procedures, products, or physicians referenced herein. This information is provided as an educational service and is not intended to serve as medical advice. Anyone seeking specific orthopaedic advice or assistance should consult his or her orthopaedic surgeon.*
© *American Academy of Orthopaedic Surgeons*

*OrthoInfo* *Your orthopaedic connection to expert information about bones, joints, and muscles*
www.orthoinfo.org

# Spine Conditioning Program
## STRETCHING EXERCISES

### 3. Sitting Rotation Stretch

| Repetitions |
|---|
| 2 sets of 4 |

| Days per week |
|---|
| Daily |

**Main muscles worked:** Piriformis, external oblique rotators, internal oblique rotators
You should feel this stretch in your buttocks, as well as at your sides

**Equipment needed:** None

**Step-by-step directions**

- Sit on the floor with both legs straight out in front of you. Cross one leg over the other.
- Slowly twist toward your bent leg, putting your hand behind you for support.
- Place your opposite arm on the side of your bent thigh and use it to help you twist further.
- Look over your shoulder and hold the stretch for 30 seconds. Slowly come back to center.
- Repeat on the other side. Repeat the entire sequence 4 times.

| **Tip** | Sit up tall and keep your sit bones pressed into the floor throughout the stretch. |
|---|---|

### 4. Modified Seat Side Straddle

| Repetitions |
|---|
| 10 each side |

| Days per week |
|---|
| Daily |

**Main muscles worked:** Hamstrings, extensor muscles, erector spinae
You should feel this stretch in the back of your thighs and into your lower and middle back

**Equipment needed:** None

**Step-by-step directions**

- Sit on the floor with one leg extended to the side and the other leg bent.
- Keep your back straight and bend from your hips toward the foot of your straight leg. Reach your hands toward your toes and hold for 5 seconds.
- Slowly round your spine and bring your hands to your shin or ankle. Bring your head down as close to your knee as possible.
- Hold for 30 seconds and then relax for 30 seconds.
- Repeat on the other side. Repeat the sequence 10 times.



| **Tip** | Keep your extended leg straight as you bring your head down. |
|---|---|

*AAOS does not endorse any treatments, procedures, products, or physicians referenced herein. This information is provided as an educational service and is not intended to serve as medical advice. Anyone seeking specific orthopaedic advice or assistance should consult his or her orthopaedic surgeon.*

*OrthoInfo*   **Your orthopaedic connection to expert information about bones, joints, and muscles**
www.orthoinfo.org

## Spine Conditioning Program
### STRETCHING EXERCISES

### 5. Knee to Chest

| Repetitions |
|---|
| 3 sets of 10 |

| Days per week |
|---|
| Daily |

**Main muscles worked:** Quadratus lumborum
You should feel this stretch in your lower back, as well as in the front of your hip and inner thigh

**Equipment needed:** None



**Step-by-step directions**

- Lie on your back on the floor.

- Lift one leg and bring your knee toward your chest. Grasp your knee or shin and pull your leg in as far as it will go.

- Tighten your abdominals and press your spine to the floor. Hold for 5 seconds.

- Repeat on the other side, then pull both legs in together. Repeat the sequence 10 times.

| **Tip** | Keep your spine aligned to the floor throughout the sequence. |
|---|---|

*AAOS does not endorse any treatments, procedures, products, or physicians referenced herein. This information is provided as an educational service and is not intended to serve as medical advice. Anyone seeking specific orthopaedic advice or assistance should consult his or her orthopaedic surgeon.*
© *American Academy of Orthopaedic Surgeons*

*OrthoInfo*  **Your orthopaedic connection to expert information about bones, joints, and muscles**
www.orthoinfo.org

## Spine Conditioning Program
### STRENGTHENING EXERCISES

### 6. Bird Dog

| Repetitions |
|:-----------:|
| 5 |

| Days per week |
|:-------------:|
| Daily |

**Main muscles worked:** Back extensors, erector spinae, gluteal muscles
You should feel this exercise in your lower back and into your buttocks

**Equipment needed:** None



Start

Finish

**Step-by-step directions**

- Begin on your hands and knees with your shoulders positioned over your hands and your hips directly over your knees.
- Tighten your abdominal muscles and raise one arm straight out to shoulder-height and level with your body. Hold until you feel balanced.
- Slowly lift and extend the opposite leg straight out from your hip.
- Tighten the muscles in your buttocks and thigh, and hold this position for 15 seconds.
- Slowly return to the start position and repeat with the opposite arm and leg.

| **Tip** | Keep your stomach muscles tight and your back flat to stay balanced. |
|---------|---------------------------------------------------------------------|

### 7. Plank

| Repetitions |
|:-----------:|
| 5 |

| Days per week |
|:-------------:|
| Daily |

**Main muscles worked:** Back extensors, erector spinae, quadratus lumborum, abdominals
You should feel this exercise in your middle to lower back, abdominals, and gluteal muscles

**Equipment needed:** None

**Step-by-step directions**

- Lie on your stomach with your forearms on the floor and your elbows directly below your shoulders.
- Tighten your abdominal muscles and lift your hips off of the floor.
- Squeeze your gluteal muscles and lift your knees off of the floor.
- Keep your body straight and hold for 30 seconds. If you cannot hold this position, bring your knees back to the floor and hold with just your hips lifted.
- Slowly return to the start position and rest 30 seconds. Repeat.

| **Tip** | Do not let your pelvis sag toward the floor. Keep your stomach muscles tight. |
|---------|------------------------------------------------------------------------------|

AAOS does not endorse any treatments, procedures, products, or physicians referenced herein. This information is provided as an educational service and is not intended to serve as medical advice. Anyone seeking specific orthopaedic advice or assistance should consult his or her orthopaedic surgeon.
© American Academy of Orthopaedic Surgeons

*OrthoInfo* **Your orthopaedic connection to expert information about bones, joints, and muscles**
www.orthoinfo.org

# Spine Conditioning Program
## STRENGTHENING EXERCISES

## 8. Modified Side Plank

| Repetitions |
|:-----------:|
| 5 |

| Days per week |
|:-------------:|
| Daily |

**Main muscles worked:** Quadratus lumborum, external oblique rotators, internal oblique rotators
You should feel this exercise in your lower back, waist, and abdominals

**Equipment needed:** None



**Step-by-step directions**

- Lie on your side on the floor with your bottom leg slightly bent and top leg straight. Your elbow should be directly under your shoulder with your forearm extended on the floor in front of you.

- Tighten your abdominal muscles and raise your hip off of the floor.

- If you can, straighten your bottom leg and lift your knee off of the floor as shown.

- Keep your body straight and hold this position for 15 seconds.

- Slowly return to the start position and repeat on the other side.

| **Tip** | Keep neck in alignment with your spine and do not shrug your shoulder up to your ear. |

## 9. Hip Bridge

| Repetitions |
|:-----------:|
| 5 |

| Days per week |
|:-------------:|
| Daily |

**Main muscles worked:** Lower back extensor, erector spinae, gluteal muscles, hamstrings
You should feel this exercise in your lower back, buttocks, and back of your thigh

**Equipment needed:** None

**Step-by-step directions**

- Lie on your back on the floor with your arms at your sides, your knees bent, and your feet flat on the floor.

- Tighten your abdominal and gluteal muscles and lift your pelvis so that your body is in a straight line from your shoulders to your knees.

- Hold this position for 15 seconds.

- Slowly return to the start position and repeat.

| **Tip** | Center your weight over your shoulder blades. Do not tense up in your neck. |

*AAOS does not endorse any treatments, procedures, products, or physicians referenced herein. This information is provided as an educational service and is not intended to serve as medical advice. Anyone seeking specific orthopaedic advice or assistance should consult his or her orthopaedic surgeon.*

© *American Academy of Orthopaedic Surgeons*

**OrthoInfo**  *Your orthopaedic connection to expert information about bones, joints, and muscles*
www.orthoinfo.org

# Spine Conditioning Program
## STRENGTHENING EXERCISES

## 10. Abdominal Bracing

| Repetitions |
|:---:|
| 5 |

| Days per week |
|:---:|
| Daily |

**Main muscles worked:** Abdominals
You should feel this exercise in your stomach muscles

**Equipment needed:** None



**Step-by-step directions**

- Lie on your back on the floor with your knees bent and arms at your sides.
- Tighten your abdominal muscles so that your stomach pulls away from your waistband.
- Hold this position for 15 seconds.

| Tip | Flatten your lower back into the floor. |
|:---:|:---|

## 11. Abdominal Crunch

| Repetitions |
|:---:|
| 2 sets of 10 |

| Days per week |
|:---:|
| Daily |

**Main muscles worked:** Abdominals
You should feel this exercise in your stomach muscles

**Equipment needed:** None



**Step-by-step directions**

- Lie on your back on the floor with your knees bent and hands at the back of your head with your elbows open wide.
- Tighten your abdominal muscles and lift your head and shoulder blades off of the floor.
- Keep your back flat to the floor and hold for 2 seconds.
- Slowly lower and repeat.

| Tip | Relax your neck and do not pull on your head with your hands. |
|:---:|:---|

AAOS does not endorse any treatments, procedures, products, or physicians referenced herein. This information is provided as an educational service and is not intended to serve as medical advice. Anyone seeking specific orthopaedic advice or assistance should consult his or her orthopaedic surgeon.

© American Academy of Orthopaedic Surgeons





Vanessa Cooper
Reg. # 58397-018
Satellite Prison Camp
FCC Victorville
P.O. BOX 5300
Adelanto, CA. 92301

United States Dist. Court for
the Central Dist. of California
312 North Spring Street
Los Angeles, CA. 90012-4797

RECEIVED
CLERK, U.S. DISTRICT COURT

JUL 1 1 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

RETURN RECEIPT
REQUESTED

U.S. POSTAGE
ADELANTO, CA
JUN 30
AMOUNT
$0.00
R2304H107789-11

CERTIFIED MAIL

7017 0660 0000 5205 9574

PRIORITY
★ MAIL ★

TRACKED
★★★
INSURED
★★★

UNITED STATES
POSTAL SERVICE

For Domestic and International Use        Label 107R, May 2014